Ex. A

HKIAC/A18222

# IN THE MATTER OF AN ARBITRATION PURSUANT TO THE HONG KONG INTERNATIONAL ARBITRATION CENTRE 2018 ADMINISTERED ARBITRATION RULES CASE NO. A18222

———————————

BETWEEN

ZHONGZHI HI-TECH OVERSEAS INVESTMENT LTD.                Claimant

And

VINCENT WENYONG SHI                Respondent

(each a "**Party**" and collectively, the "**Parties**")

———————————

---

**FINAL AWARD**

---

*Arbitral Tribunal*
**Dr Benny Lo**
**Sole Arbitrator**
("**Tribunal**")

Date: 23 August 2019
Seat of Arbitration: Hong Kong

## TABLE OF CONTENTS

**GLOSSARY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**A.**   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

**B.**   **PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

B1.   Commencement of proceedings and constitution of the Tribunal . . . . . . . . . . . . . **8**

B2.   Initial procedural consultation and Procedural Order No. 1 . . . . . . . . . . . . . . . . .  11

B3.   Statement of case and Procedural Order No. 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

B4.   Hearing and Procedural Order No. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

B5.   Claimant's post-hearing submission and witness statement . . . . . . . . . . . . . . . . . .  18

B6.   Procedural Order No. 4 and costs submissions . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

B7.   Further clarifications and extension of time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

B8.   Closure of proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

**C.**   **PROCEDURAL RULES AND APPLICABLE LAW** . . . . . . . . . . . . . . . . . . .  **21**

**D.**   **CLAIMANT'S CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **22**

**E.**   **RESPONDENT'S NON-PARTICIPATION** . . . . . . . . . . . . . . . . . . . . . . . . . . .  **27**

**F.**   **TRIBUNAL'S ANALYSIS AND DECISION** . . . . . . . . . . . . . . . . . . . . . . . . . .  **28**

F1.   Relevant contractual provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

F2.   Findings of fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

F3.   Claim for principal sum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

F4.   Claim for interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  39

**G.**   **COSTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **41**

G1.   Applicable rules and law on costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

G2.   Determination and assessment of costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43

**H.**   **FINAL AWARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  **47**

**Annex A (Courier tracking records)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **48**

**Annex B (Tribunal's email dated 22 July 2019)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**49**

**Annex C (Claimant's costs summaries)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **50**

**Annex D (Statement of account)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **51**

## GLOSSARY

| Defined Term | Description |
|---|---|
| Amended Cooperation Agreement | Cooperation Agreement as amended by the Amendment to Cooperation Agreement |
| Amendment to Cooperation Agreement | Amendment to Cooperation Agreement made on about 9 November 2017 |
| Arbitration Agreement | The "Arbitration Clause" contained in pages 2 and 3 of the RGLA Agreement |
| Arbitration Ordinance | Hong Kong Arbitration Ordinance (Cap. 609) |
| Claimant's Clarification | Claimant's Clarification dated 5 July 2019 |
| Claimant's Counsel | Mr Arthur Ma Zhihua, Mr Xing Wan, Mr Mark Young and Ms Sharon Yang Sijie of DaHui Lawyers |
| Claimant's Further Clarification | Claimant's email to the Tribunal dated 26 July 2019 in response to the Tribunal's email at **Annex B** |
| Company | NQ Mobile Inc., later known as Link Motion, Inc. |
| Convertible Note Purchase Agreement | Convertible Note Purchase Agreement dated 23 September 2016 |
| Convertible Note | Convertible Note issued to the Claimant pursuant to the Convertible Note Purchase Agreement |
| Cooperation Agreement | Cooperation Agreement dated 23 September 2016 |
| Escrow Account | Escrow Account set up to deposit funds to guarantee the obligations of RPL and the Respondent under sections 1.1 and 1.2 of the Cooperation Agreement |
| Hearing | Hearing of this arbitration held on 21 May 2019 |
| HKIAC | Hong Kong International Arbitration Centre |
| HKT | Hong Kong local time |
| Mr Wu | Mr Wu Xichun |
| Ms Zhu | Ms Joanne Yan Zhu |
| Notice of Arbitration | Claimant's Notice of Arbitration dated 20 December 2018 |
| Partial Redemption Agreement | Partial Redemption Agreement and Amendment to |

| Defined Term | Description |
|---|---|
| | Convertible Note made on about 9 November 2017 |
| Party or Parties | Claimant and/or Respondent |
| PO1 | Procedural Order No. 1 dated 25 February 2019 |
| PO2 | Procedural Order No. 2 dated 6 May 2019 |
| PO3 | Procedural Order No. 3 dated 22 May 2019 |
| PO4 | Procedural Order No. 4 dated 24 June 2019 |
| Post-Hearing Materials | Wu WS and Post-Hearing Submission together with exhibits and authorities thereto |
| Post-Hearing Submission | Claimant's Post-Hearing Submission dated 5 June 2019 |
| R's 1st Address | Building 4, 11 East Hepingli Street, Dongcheng District, Beijing, People's Republic of China |
| R's 2nd Address | 5th Floor, Building 2 South Side, Hang Xing Yuan, No.11 Hepingli East Street, Dongcheng District, Beijing 100013, People's Republic of China |
| Revised Convertible Note | Revised Convertible Note issued pursuant to the Partial Redemption Agreement |
| RGLA Agreement | Restated Governing Law and Arbitration Agreement dated 30 November 2018 |
| RPL | RPL Holdings Limited |
| Rules | 2018 HKIAC Administered Arbitration Rules |
| SOC | Claimant's Statement of Claim dated 18 March 2019 |
| Tribunal | Dr Benny Lo, Sole Arbitrator of the tribunal |
| Umbrella Agreement | Umbrella Agreement made on about 3 September 2018 |
| Wu WS | Witness Statement of Wu Xichun dated 5 June 2019 |
| ZEG | Zhongzhi Enterprise Group |

## A. INTRODUCTION

1.  The Claimant, Zhongzhi Hi-Tech Overseas Investment Ltd., is a Limited Liability Exempted Company incorporated in the Cayman Islands on 26 September 2016 with a Certificate of Incorporation number 315328. The Claimant's registered office is situate at the offices of Vistra (Cayman) Limited, P. O. Box 31119 Grand Pavilion, Hibiscus Way, 802 West Bay Road, Grand Cayman KY1-1205, Cayman Islands.[1]

2.  The Claimant is legally represented in this arbitration by Mr Arthur Ma Zhihua, Mr Xing Wan, Mr Mark Young and Ms Sharon Yang Sijie, all of DaHui Lawyers at Suite 3720 China World Tower A, 1 Jianguomenwai Avenue, Beijing 100004, People's Republic of China (collectively hereinafter, "**Claimant's Counsel**").

3.  The Respondent, (Dr) Vincent Wenyong Shi, is a citizen of the People's Republic of China with ID number              . The Respondent's contact details, given in the Notice of Arbitration dated 20 December 2018 ("**Notice of Arbitration**") and as the arbitral tribunal ("**Tribunal**") was informed in these proceedings, are:-

    Address:   Building 4, 11 East Hepingli Street, Dongcheng District, Beijing, People's Republic of China ("**R's 1st Address**")[2]; and
    5th Floor, Building 2 South Side, Hang Xing Yuan, No.11 Hepingli East Street, Dongcheng District, Beijing 100013, People's Republic of China ("**R's 2nd Address**")[3];

    Telephone: +86 13501233445;

    Email:     vincent@nq.com and vincent@lkmotion.com[4]; and
    shiwenyong@263.net[5].

4.  The Respondent is not legally represented in this arbitration. Save and except a few

---

[1] Claimant's Certificate of Incumbency dated 17 August 2018 (Exhibit C-012).

[2] Effective up to 18 April 2019 (see PO1 and PO2).

[3] Effective from 19 April 2019 (see PO1 and PO2).

[4] Effective up to 16 May 2019 (see PO1, PO2 and PO3).

[5] Effective from 19 April 2019 (see PO2).

[5]

communications with the Tribunal (more on this below), the Respondent has not participated substantively in this arbitration despite having been notified of the proceedings and served with key correspondences between the Tribunal and the parties.

5.     The Tribunal consists of Dr Benny Lo, the Sole Arbitrator appointed as set out in **Section B1.** below.   The Tribunal's current contact details are as follows:-

Address:     Dr Benny Lo
             38/F, Gloucester Tower
             The Landmark
             Central, Hong Kong
Telephone:   +852 2526 3071
Email:       Benny.Lo@dvc.hk

6.     The Claimant has referred to this arbitration a dispute with the Respondent regarding the latter's payment obligations under two agreements, namely:-

       6.1     Cooperation Agreement made by the Claimant, RPL Holdings Limited ("**RPL**") and the Respondent dated 23 September 2016[6] ("**Cooperation Agreement**"); and

       6.2     Cooperation Agreement as amended by the Amendment to Cooperation Agreement made by the Claimant, RPL and the Respondent on or about 9 November 2017 ("**Amendment to Cooperation Agreement**")[7] (the Cooperation Agreement as amended aforesaid is referred hereinafter as the "**Amended Cooperation Agreement**").

7.     Apart from these agreements, the Claimant and the Respondent also signed the Umbrella Agreement on about 3 September 2018[8] ("**Umbrella Agreement**") and the

---

[6] Exhibit C-001.

[7] Exhibit C-004.

[8] Exhibit C-007.

Restated Governing Law and Arbitration Agreement dated 30 November 2018 [9] ("**RGLA Agreement**"). Despite the aforesaid, as the Claimant's director Mr Wu Xichun ("**Mr Wu**") explained, the Umbrella Agreement was "*ultimately not finalized and executed by all parties*"[10]. It was also clarified in the Claimant's Post-Hearing Submission that "*the Umbrella Agreement is irrelevant to any substantive part of this arbitration, including the Tribunal's jurisdiction and the Claimant's claims.*"[11]

8. Pages 2 and 3 of the RGLA Agreement set out an "Arbitration Clause" ("**Arbitration Agreement**"). The Arbitration Agreement reads as follows:-

> "*Any dispute, controversy, difference or claim between Zhongzhi and Dr. Shi arising out of or relating to the Cooperation Agreement as amended by the Amendment to Cooperation Agreement and the Umbrella Agreement, including any disputes relating to the existence, validity, interpretation, performance, breach or termination thereof or any dispute regarding non-contractual obligations arising out of or relating to it shall be referred to and finally resolved by arbitration administered by the Hong Kong International Arbitration Centre ("**HKIAC**") under the 2018 HKIAC Administered Arbitration Rules.*
> *The law of this arbitration clause shall be Hong Kong law.*
> *The seat of arbitration shall be Hong Kong.*
> *The arbitration shall be conducted in accordance with an expedited procedure provided under Article 42 of the 2018 HKIAC Administered Arbitration Rules.*
> *The case shall be referred to a sole arbitrator, namely Dr. Benny Lo [...].*
> *The arbitration proceedings shall be conducted in English.*"

9. According to the Notice of Arbitration, the Claimant's claim pursuant to the Amended Cooperation Agreement is for the sum of US$242,880,000 as of 3 October 2018, with interest continuing to accrue at the rate of 10% per annum until payment. The Claimant also claims costs of this arbitration, including counsel's fees, as well as "[such] *further, other and consequential relief as may be just and expedient*".

---

[9] Exhibit C-008.

[10] §73 of the Witness Statement of Wu Xichun dated 5 June 2019 ("**Wu WS**").

[11] §5 of Claimant's Post-Hearing Submission dated 5 June 2019 ("**Post-Hearing Submission**").

## B.   PROCEDURAL HISTORY

10.   Save for the key procedural events, the Tribunal does not intend to set out in this Award the exhaustive procedural history.   The procedural history of this arbitration is a matter of record and it is unnecessary for the Tribunal to set out the same exhaustively.

### B1.   *Commencement of proceedings and constitution of the Tribunal*

11.   On 20 December 2018, the Claimant commenced this arbitration by submitting the Notice of Arbitration to the Hong Kong International Arbitration Centre ("**HKIAC**") pursuant to Article 4 of the 2018 HKIAC Administered Arbitration Rules ("**Rules**").

12.   In §§20-22 of the Notice of Arbitration, the Claimant, by reference to the Arbitration Agreement, requested the HKIAC to appoint Dr Benny Lo as the Sole Arbitrator to conduct the arbitration in accordance with the Expedited Procedure under the Rules.

13.   §3 of the Notice of Arbitration states:

> "... *a copy of the Notice of Arbitration together with the exhibits thereto is being served simultaneously on the Respondent by email and/or courier in accordance with the contact details set out in paragraph 9 of this Notice of Arbitration.*"

14.   By letter dated 24 December 2018[12], the HKIAC confirmed that it would proceed to administer the present arbitration in accordance with the Rules.   The HKIAC also requested, *inter alia*, the Claimant to produce document verification of service of the Notice of Arbitration on the Respondent and pay the Registration Fee for this arbitration.

15.   On 28 December 2018, the Claimant by email[13] confirmed with the HKIAC that it had paid the Registration Fee in the sum of HK$8,000.   According to the Statement of Account herein dated 29 January 2019, the HKIAC received the said Registration Fee

---

[12] It was sent to the Claimant's Counsel by fax, email and courier and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

[13] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

in the net amount of HK$7,985 on 26 November 2018.

16. In the same email referred to in the preceding paragraph, the Claimant provided documentary proof obtained from EMS confirming that a copy of the Notice of Arbitration together with its annexures was delivered to the Respondent at R's 1st Address by courier on 22 December 2018 and was signed for at 08:43:58 that day.

17. By letter dated 28 December 2018[14], the HKIAC requested the Respondent to submit an Answer to the Notice of Arbitration pursuant to Article 5.1 of the Rules within 30 days from the day on which he received the Notice, i.e. by 21 January 2019.   In the same letter, pursuant to Article 10.1 of the Rules, the HKIAC invited the Parties to agree on the method for determining the fees of the arbitral tribunal by 21 January 2019.

18. On 29 December 2018, the Claimant by email[15] confirmed with the HKIAC its agreement to communicate with the HKIAC by email only during these proceedings.

19. By letter dated 3 January 2019[16], the HKIAC repeated its request for the Respondent to submit an Answer to the Notice of Arbitration and its invitation for the Parties to agree on the method for determining the fees of the arbitral tribunal by 21 January 2019.   It also requested the Parties, pursuant to Article 41.1 of the Rules, to pay initial deposits in the total sum of HK$100,000 for the fees and expenses of the arbitral tribunal and the total sum of HK$400,000 for the HKIAC Administrative Fees by 17 January 2019.

20. On 8 January 2019, the Claimant by email[17] informed the HKIAC that it proposed for the fees of the arbitral tribunal be calculated based on hourly rate(s) in accordance with Schedule 2 of the Rules.   According to the case file, the Respondent has not indicated his agreement thereto or provided any proposal of his own by the stipulated deadline.

---

[14] It was sent to the Claimant's Counsel by fax, email and courier and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

[15] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[16] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

[17] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

21.     By letter dated 11 January 2019[18], the HKIAC informed the Parties that it had decided that this arbitration shall be conducted in accordance with the Expedited Procedure under Article 42 of the Rules.     In the same letter, the HKIAC informed the Parties that it had contacted Dr Benny Lo, their jointly designated Sole Arbitrator, and asked whether they would agree with his proposed hourly rate of HK$4,000.     The HKIAC also repeated its said requests for the Respondent to submit an Answer to the Notice of Arbitration and for the Parties to pay the initial deposits referred to in §19 above.

22.     On 14 January 2019, the Claimant by email[19] informed the HKIAC that it agreed with Dr Benny Lo's proposed hourly rate.     According to the case file, the Respondent had not responded to the HKIAC's enquiry in this respect by the stipulated deadline.

23.     By letter dated 23 January 2019[20], the HKIAC informed the Parties that:-

    23.1    It had not received from the Respondent any Answer to the Notice of Arbitration within the stipulated deadline (i.e. by 21 January 2019);

    23.2    Pursuant to Article 9.3 of the Rules, it confirmed the designation of Dr Benny Lo as the Sole Arbitrator whereupon the Tribunal was thereby constituted;

    23.3    Pursuant to Article 10.1 of the Rules, the Tribunal's fees shall be calculated based on hourly rate in accordance with Schedule 2 thereto;

    23.4    Pursuant to Article 10.2 of the Rules, it had determined that the Tribunal's hourly rate shall be HK$4,000; and

    23.5    It would transmit the case file to the Tribunal shortly.

---

[18] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

[19] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[20] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

24.    On 23 January 2019, the HKIAC transmitted the case file to the Tribunal.

## B2.   Initial procedural consultation and Procedural Order No. 1

25.    By letter dated 24 January 2019[21], the Tribunal contacted the Parties and gave certain
        preliminary directions on communications, enquired with them as to their preferred
        manner of procedural consultation pursuant to Article 13.2 of the Rules, and reminded
        them to pay the said initial deposits as the HKIAC had requested earlier.    The Tribunal
        requested the Parties to revert on the said matters by 31 January 2019.

26.    On 26 January 2019, the Claimant by email[22] informed the Tribunal that it agreed to
        communicate with the Tribunal by email only in this arbitration and preferred a
        procedural consultation be conducted by telephone between 11 and 15 February 2019.

27.    On the same day, the Claimant by a second email[23] confirmed with the HKIAC that,
        on 16 January 2019, it had paid the full initial deposits for the Tribunal's fees and
        expenses and for the HKIAC Administrative Fee as previously requested.    According
        to the Statement of Account herein dated 29 January 2019, the HKIAC received the said
        initial deposits in the respective net amounts of HK$99,985 and HK$399,985.

28.    On 30 January 2019 at 11:41 hours Hong Kong local time ("**HKT**") , the Tribunal
        received an email[24] from the Respondent (vincent@lkmotion.com) stating:-

        "*Dear Sirs*
        *I refer to the HKIAC's letter dated 23 January 2019.*
        *The Respondent hereby responds to the inquiries of the HKIAC below:*
        1. **Method of Determining the Fees of the Arbitral Tribunal:** *The Respondent*

---

[21] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and
vincent@lkmotion.com) and courier (at R's 1st Address - see SF Express tracking record at **Annex A, No.1**).

[22] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.    The Claimant's Counsel
also confirmed that it would send a copy of this email to the Respondent by courier.

[23] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[24] It was also copied to the Claimant's Counsel.

[11]

> *proposes that the fees of the arbitral tribunal be calculated on the basis of hourly rate(s) in accordance with Schedule 2 of the Rules.*
> 2. ***Email Communication:*** *The Respondent agrees to communicate with the HKIAC by email only in these proceedings.*
> 3. ***Procedure:*** *The Respondent agrees to use Expedited Procedure.*"

29. By letter dated 2 February 2019[25], the Tribunal informed the Parties that a procedural consultation of this arbitration would be held on 15 February 2019 at 10:00 HKT by teleconference and supplied directions in respect of the teleconference. The Tribunal also gave further directions as to communication with the Respondent in that letter.

30. On 13 February 2019, the Claimant by email[26] informed the Tribunal about its position on a number of procedural matters to be discussed at the procedural consultation. The Respondent has not thereafter responded or raised any other points in this regard.

31. On 15 February 2019 starting at 10:00 HKT, the Tribunal conducted a telephone conference with members of the Claimant's Counsel to discuss various procedural matters. The Respondent did not participate in that telephone conference despite having been notified of the same as aforesaid.

32. By letter dated 16 February 2019[27], the Tribunal circulated a draft Procedural Order No.1 and requested the Parties to comment by 25 February 2019. In the same letter, the Tribunal noted the Respondent's failure to respond to the Tribunal's written communications as of that date, reminded him that he was at liberty to participate in these proceedings, and invited him to inform the Tribunal if he had any comments.

---

[25] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address - see DHL tracking record at **Annex A, No.2**).

[26] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com. The Tribunal also requested the Claimant to send a copy of this email to the Respondent by courier.

[27] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address - see DHL tracking record at **Annex A, No.3**).

[12]

33. On 22 February 2019, the Claimant by email[28] informed the Tribunal that it had no comment on the draft Procedural Order No. 1. The Respondent had not provided any comment on the said draft order or generally by 25 February 2019.

34. In the circumstances, by letter dated 25 February 2019[29], the Tribunal issued a Procedural Order No. 1 of the same date ("**PO1**") in which initial procedural directions were given dealing with:- notifications, communications & service (§§1-4); language (§§5-6); seat & rules of procedure, etc. (§§7-9); time limits (§§10-12); statements of case (§§13-15); documentary evidence & document production requests (§§16-19); witness evidence (§§20-22); hearings (§23); and miscellaneous matters (§24-25).

### B3.  *Statement of case and Procedural Order No. 2*

35. On 18 March 2019, the Claimant by email[30] submitted its Statement of Claim ("**SOC**") pursuant to §13(a) of PO1. In the SOC, the Claimant referred to documents attached as exhibits to the Notice of Arbitration but did not adduce any additional evidence, whether in the form of witness statement(s) or additional documents.

36. The Respondent had not submitted any Statement of Defence and Counterclaim (if any) by 8 April 2019, being the deadline under §13(b) of PO1. In fact, as of today, the Respondent has not submitted any Statement of Defence and Counterclaim or any other written statement or submissions raising a substantive defence to the Claimant's claim.

37. On 9 April 2019, the Claimant by email[31] requested an Order that the submissions contemplated under §§13(c) and (d) be dispensed with, on the ground that the Respondent had not submitted any Statement of Defence. The Claimant also invited the Tribunal to issue an award on the basis of the documentary evidence submitted.

---

[28] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[29] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address – see DHL tracking record at **Annex A, No.4**).

[30] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com. The Claimant's Counsel also confirmed that it would send a copy of this email to the Respondent by courier.

[31] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

38.   By letter dated 12 April 2019[32], the Tribunal circulated a copy of the Claimant's said email dated 9 April 2019 and invited the Respondent to comment thereon by 19 April 2019.   Although that letter was couriered to the Respondent, DHL reported that it was not possible to deliver the same as the relevant premises at R's 1st Address were "closed"[33].   On 17 April 2019, the Tribunal by email[34] informed the Parties of this fact and invited the Claimant to supply any alternative postal address of the Respondent.

39.   On 18 April 2019, the Claimant by email[35] informed the Tribunal that documents could be delivered to the Respondent at R's 2nd Address.   It also provided information it believed would assist delivery of documents to the Respondent at that address.   The Claimant also stated that it would deliver a copy of the Tribunal's 17 April 2019 email to the Respondent at R's 2nd Address and keep the Tribunal updated as to delivery status.

40.   Also on 18 April 2019, the Tribunal by email[36] directed that the time for the Respondent to comment on the Claimant's 9 April 2019 request be extended to 26 April 2019.   The Tribunal also asked the Claimant to inform the Respondent of this extended deadline.   On 20 April 2019, the Claimant by email[37] informed the Tribunal that delivery of the Tribunal's emails dated 17 April 2019 and 18 April 2019 was successful.

41.   To satisfy itself that R's 2nd Address was a genuine address of the Respondent, on 20 April 2019, the Tribunal by email[38] requested the Claimant to explain whether that address falls under any part of Articles 3.1 and 3.2 of the Rules, and if so, state the applicable part(s) and provide supporting information and documentary evidence, if any.

42.   On 25 April 2019 at 17:25 HKT, the Tribunal received an email from the email address shiwenyong@263.net stating:-

---

[32] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com and vincent@lkmotion.com) and courier (at R's 1st Address).

[33] See DHL tracking record at **Annex A, No.5**.

[34] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[35] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[36] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[37] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

[38] It was copied to the Respondent at vincent@nq.com and vincent@lkmotion.com.

*"I, Vincent Shi, hereby to confirm that my address has been changed to : 5th Floor, Building 2 South Side, Hang Xing Yuan, No. 11 Hepingli East Street, Dongcheng District, Beijing (北京东城区和平里东街 11 号院航星园 2 号楼南侧 5 层) [i.e. R's 2nd Address], thanks all."* (explanatory comment added in *[square brackets]*)

43. On 25 April 2019 at 18:13 HKT, the Tribunal received an email from the Claimant[39] stating:-

> *"We refer to the Respondent's email below confirming his current post address. Should the Tribunal need any further information regarding this issue, please do not hesitate to provide us with your instructions."*

44. Accordingly, by letter dated 29 April 2019[40], the Tribunal informed the Parties that:-

   44.1 It had tentatively determined that R's 2nd Address shall be used in serving documents and effecting notifications and communications to the Respondent for the purposes of Articles 3.1(a) and/or 3.1(d) of the Rules, and would in due course issue a further procedural order to vary the Respondent's contact details;

   44.2 It did not consider it appropriate, as the Claimant submitted, to issue an award on the basis of the documentary evidence submitted, and that a half- to one-day hearing shall be held for receiving evidence and/or oral submissions in this matter at the HKIAC one day on either 20-24 May 2019 or 17-21 June 2019. The Tribunal also asked the Parties to provide their availabilities; and

   44.3 The Parties may provide any comments on the above by 5 May 2019.

45. On 5 May 2019, the Claimant by email[41] informed the Tribunal that it was available to

---

[39] It was copied to the Respondent at vincent@nq.com and the email address shiwenyong@263.net.

[40] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com; vincent@lkmotion.com and shiwenyong@263.net) and courier (at R's 2nd Address – see DHL tracking record at **Annex A, No.6**).

[41] It was copied to the Respondent at vincent@nq.com; vincent@lkmotion.com and shiwenyong@263.net.

attend a hearing in Hong Kong on 20 or 21 May 2019 and that it had no other comments on the Tribunal's said letter dated 29 April 2019.   On the other hand, the Respondent had not provided his availabilities for the hearing or provided any comments at all.

46.   By letter dated 6 May 2019[42], the Tribunal issued Procedural Order No. 2 of the same date ("**PO2**"), varying the Respondent's contact details from R's 1st Address to R's 2nd Address, and adding an email address of shiwenyong@263.net, with effect from 19 April 2019.   The Tribunal also directed that a hearing be held at the HKIAC on 21 May 2019 from 09:30 to 13:00 HKT (with 14:30 to 17:30 HKT reserved) and gave pre-hearing directions for the filing of evidence, submissions and hearing bundle.

47.   On 14 May 2019, the Claimant by email[43], *inter alia*, requested that the Respondent's email addresses vincent@nq.com and vincent@lkmotion.com be removed from future circulation lists in this arbitration, as the Respondent no longer had access to these addresses and that the Claimant was in ongoing disputes with Link Motion, Inc.

48.   Upon the Tribunal's request for the Respondent's comments by email[44] on 14 May 2019, the Respondent by email[45] dated 16 May 2019 stated:-

> "*Dear Sir*
> *1.   Your below email and the … Procedural Order No. 2 are well received.*
> *[…]*
> *3.   The Respondent confirme [sic] that this email (shiwenyong@263.net) will be used in the future and please remove vincent@nq.com and vincent@lkmotuon.com [sic, likely to be vincent@lkmotion.com] from the mail list*" (explanatory comment added in *[square brackets]*)

---

[42] It was sent to the Claimant's Counsel by email and to the Respondent by email (at vincent@nq.com; vincent@lkmotion.com and shiwenyong@263.net) and courier (at R's 2nd Address – see DHL tracking record at **Annex A, No.7**).

[43] It was copied to the Respondent at shiwenyong@263.net.

[44] It was copied to the Respondent at shiwenyong@263.net.

[45] It was copied to the Claimant's Counsel.

## *B4.   Hearing and Procedural Order No. 3*

49.   Pursuant to PO2, on 21 May 2019 starting at 09:30 HKT, the hearing of this arbitration took place at the HKIAC ("**Hearing**").   The Claimant was represented by Mr Wu[46] and the Claimant's Counsel[47].   The hearing lasted from 09:31 to 11:38 HKT. The Respondent, whether by himself or any representative, was absent throughout.

50.   Prior to the Hearing, the Respondent had not filed any statement of case, documentary evidence or submissions in connection with the Claimant's claim, nor had the Respondent sought leave from the Tribunal to do so.   Furthermore, the Respondent expressed no comment or objection against the Tribunal proceeding with the Hearing.

51.   At the Hearing, the Tribunal received oral submissions made by the Claimant's Counsel and had the opportunity to enquire into various matters.   These included the veracity of the Respondent's email address shiwenyong@263.net, evidentiary points arising from the various documents contained in the hearing bundle, as well as legal issues arising from parts of the Claimant's case.   All these were recorded by a professional court reporter present throughout who compiled a transcript of the Hearing.

52.   By letter dated 22 May 2019[48], the Tribunal issued Procedural Order No. 3 of the same date ("**PO3**"), removing from the circulation list of this arbitration the Respondent's email addresses vincent@nq.com and vincent@lkmotion.com with effect from 16 May 2019, directing service of the transcript of the Hearing, and granting permission for the Claimant to submit additional evidence and legal submissions by 5 June 2019 and for the Respondent to file any evidence and/or submissions in reply by 19 June 2019.

53.   On 24 May 2019, the Claimant by email[49] sent a copy of the transcript of the Hearing

---

[46] Mr Wu has been the Claimant's sole director since 1 May 2019 (see Exhibit C-013).

[47] See §2 above, except Mr Xing Wan who did not attend.

[48] It was sent to the Claimant's Counsel by email and to the Respondent by email (at shiwenyong@263.net) and courier (at R's 2nd Address – see DHL tracking record at **Annex A, No.8**).

[49] It was copied to the Respondent (at shiwenyong@263.net).   On 24 July 2019, the Claimant's Counsel by email confirmed that a copy of the hearing transcript was delivered to R's 2nd Address on 3 July 2019.

[17]

to the Tribunal and the Respondent.

54.     On 4 June 2019, the HKIAC confirmed that it had received from the Claimant HK$150,000 in payment of supplementary deposit for the Tribunal's fees and expenses previously requested on 6 May 2019 pursuant to Article 41.3 of the Rules.

## B5.     *Claimant's post-hearing submission and witness statement*

55.     On 5 June 2019:-

        55.1    The Respondent by email[50] submitted a copy of a signed Confirmation Letter in which he, *inter alia*, confirmed that shiwenyong@263.net was his "*valid personal email address*" and that he had "*received all communications in this Arbitration, including Procedural Orders No. 1, No.2 and No.3, the Notice of Arbitration, Statement of Claim, Hearing Bundle and Hearing Transcript*"; and

        55.2    Pursuant to PO3, the Claimant by email[51] submitted its Post-Hearing Submission and Wu WS (i.e. Witness Statement of Wu Xichun), both dated 5 June 2019, together with exhibits and authorities ("**Post-Hearing Materials**").

## B6.     *Procedural Order No. 4 and costs submissions*

56.     By letter dated 24 June 2019[52], and pursuant to §5 of PO3, the Tribunal issued Procedural Order No. 4 of the same date ("**PO4**") directing the Parties to submit and serve their respective costs statements and costs submissions by 2 July 2019 if they seek to recover costs and/or expenses incurred in this arbitration.   In PO4, the Parties were also given the opportunity to file reply submissions, if any, by 5 July 2019.

---

[50]  It was copied to the Claimant's Counsel.

[51]  It was copied to the Respondent by email (at shiwenyong@263.net).   On 24 July 2019, the Claimant's Counsel by email confirmed that a copy of the Post-Hearing Materials was delivered to R's 2nd Address on 3 July 2019.

[52]  It was sent to the Claimant's Counsel by email and to the Respondent by email (at shiwenyong@263.net) and courier (at R's 2nd Address – see DHL tracking record at **Annex A, No.9**).

[18]

57.    Pursuant to PO4, on 2 July 2019, the Claimant by email [53] submitted its Costs
       Submission.    On the other hand, the Respondent has not submitted any costs
       submissions whether by the stipulated deadline or at all.

### B7.    Further clarifications and extension of time

58.    Also on 2 July 2019, the Tribunal by email [54] sought clarifications from the Claimant
       as to certain matters arising from the SOC and the Post-Hearing Materials.    The
       Tribunal directed the Claimant to provide any submissions and/or evidence by 5 July
       2019, and the Respondent to provide any submissions and/or evidence by 12 July 2019.

59.    On 5 July 2019, the Claimant by email [55] submitted its Clarification of Tribunal's
       Questions ("**Claimant's Clarification**") in which the Claimant's Counsel responded to
       the Tribunal's clarifications sought on 2 July 2019 aforesaid.

60.    Thereafter, also on 5 July 2019 and pursuant to Article 42.2(f) of the Rules, the Tribunal
       applied to the HKIAC for an extension of time for the award to be rendered in the
       present case, as the Tribunal took the view that further time would be required to
       properly follow up on the Claimant's Clarification before rendering an award herein.

61.    On 11 July 2019, after having received no comments from the Parties, the HKIAC by
       email [56] informed the Tribunal and the Parties that it had granted an extension of time
       until 23 August 2019 for the Tribunal to render its award.

62.    By 12 July 2019, the Respondent had not submitted any submissions and/or evidence

---

[53] It was copied to the Respondent by email (at shiwenyong@263.net).    On 24 July 2019, the Claimant's Counsel
by email confirmed that a copy of the Claimant's Costs Submission was delivered to R's 2nd Address on 12 July
2019.

[54] It was copied to the Respondent by email (at shiwenyong@263.net).    On 24 July 2019, the Claimant's Counsel
by email confirmed that a copy of the Tribunal's email was delivered to R's 2nd Address on 12 July 2019.

[55] It was copied to the Respondent by email (at shiwenyong@263.net).    On 22 July 2019, the Claimant's Counsel
by email confirmed that a copy of the Claimant's Clarification was delivered to R's 2nd Address on 7 July 2019.

[56] It was sent to the Claimant's Counsel by email and to the Respondent by email (at shiwenyong@263.net).

in response to the Tribunal's said request for clarification with the Claimant.

63.   On 22 July 2019, the Tribunal by email[57] requested the Claimant to further clarify certain matters arising from the Claimant's Clarification.   The Tribunal directed the Parties to provide any further submissions and/or evidence by 26 July 2019.

64.   On 26 July 2019, the Claimant by email[58] provided further clarifications in response to the Tribunal's said email request dated 22 July 2019 (**"Claimant's Further Clarification"**).   The Tribunal has not received any submissions and/or evidence from the Respondent in this regard, whether by 26 July 2019 or at all.

## B8.   *Closure of proceedings*

65.   By a letter dated 27 July 2019[59], the Tribunal enquired with the Parties whether they wished to make any further submissions or raise any other matters regarding this arbitration, whether procedurally or substantively, before closure of these proceedings.

66.   On 3 August 2019, the Claimant by email[60] confirmed that it did not wish to make any further submission or raise any other matter regarding this arbitration.   The Respondent, on the other hand, has not responded to the Tribunal's enquiry.

67.   In these circumstances, having satisfied itself that the Parties had been given a reasonable opportunity to present their case, the Tribunal by letter dated 7 August 2019[61] declared the present proceedings closed, pursuant to Article 31.1 of the Rules.

---

[57] It was copied to the Respondent by email (at shiwenyong@263.net).   On 23 July 2019, the Claimant's Counsel by email confirmed that a copy of the Tribunal's email was delivered to R's 2nd Address on 23 July 2019.

[58] It was copied to the Respondent by email (at shiwenyong@263.net).   On 3 August 2019, the Claimant's Counsel by email confirmed that a copy of the Claimant's Further Clarification was delivered to R's 2nd Address on 2 August 2019.

[59] It was sent to the Claimant's Counsel by email and to the Respondent by email (at shiwenyong@263.net) and courier (at R's 2nd Address – see DHL tracking record at **Annex A, No.10**).

[60] It was copied to the Respondent by email (at shiwenyong@263.net).

[61] It was sent to the Claimant's Counsel by email and to the Respondent by email (at shiwenyong@263.net) and

68. Neither the Claimant nor the Respondent has applied for these proceedings to be re-opened prior to the making of this Final Award.

## C. PROCEDURAL RULES AND APPLICABLE LAW

69. There is no dispute that the Rules are the applicable rules for this arbitration, and that the Tribunal was duly confirmed and constituted pursuant to Article 9.3 of the Rules.

70. Pursuant to Article 14.1 of the Rules, the seat of an arbitration conducted thereunder shall be Hong Kong, unless the parties agree or the arbitral tribunal determines otherwise. As the Parties have agreed for the seat of an arbitration commenced under the Arbitration Agreement to be Hong Kong, the Hong Kong Arbitration Ordinance (Cap. 609) ("**Arbitration Ordinance**") is applicable to the present arbitration.

71. According to §1 of the Notice of Arbitration, the Claimant has referred the present dispute to arbitration based on the Cooperation Agreement, the Amended Cooperation Agreement, the Umbrella Agreement and the RGLA Agreement. As mentioned in §7 above, the Umbrella Agreement is not relevant for present purposes.

72. Apart from the Arbitration Agreement, page 2 of the RGLA Agreement states:-

*"We, the undersigned, agree to replace the governing law clause ... applicable to any dispute, controversy, difference or claim between Zhongzhi and Dr. Shi arising out of or relating to the Cooperation Agreement as amended by the Amendment to Cooperation Agreement and the Umbrella Agreement with the following:*

*Governing Law*
*The Parties herein agree that the Cooperation Agreement as amended by the Amendment to Cooperation Agreement and the Umbrella Agreement shall be interpreted and construed in accordance with the laws of the Hong Kong Special Administrative Region of the People's Republic of China ("**Hong***

---

courier (at R's 2ⁿᵈ Address – see DHL tracking record at **Annex A, No.11**).

[21]

> *Kong"), without regard to any rule or principle of private international law or conflict of laws under which any other law would be made applicable…"*

73. Accordingly, although section 4.1 of the Cooperation Agreement provides that the agreement shall be governed and interpreted by the internal laws of the State of New York[62], for the present purposes, the substantive applicable law is the law of Hong Kong.

## D.   CLAIMANT'S CASE

74. The Claimant's claim herein is to enforce the Respondent's payment obligation under the Amended Cooperation Agreement.

75. The Claimant's case has been stated in the Notice of Arbitration, pleaded in the SOC and further elaborated in Wu WS.   The Claimant's key contentions are as follows:-

76. Zhongzhi Enterprise Group ("**ZEG**") is a leading institutional investor in greater China which focuses on the technology, semiconductor, software and internet industries[63].

77. In 2016, the Respondent was the Chairman and Chief Operating Officer of NQ Mobile Inc.[64] ("**Company**"), a listed company on the New York Stock Exchange engaged in the business of providing mobile internet services[65].

78. In 2016, the Respondent sought out ZEG to make an investment in the Company.   The two sides negotiated such investment to be effected by two transactions, namely:-

   78.1 Agreements with the Company in which ZEG would invest in a convertible note to be issued by the Company; and

---

[62] The Amended Cooperation Agreement does not contain a governing law clause of its own or seeks to amend Section 4.1 of the Cooperation Agreement.   Instead, it states, at Clause 2(b), that *"Except as expressly amended hereby, all terms and provisions of the* [Cooperation Agreement] *shall remain in force and effect…"*

[63] Wu WS §2.

[64] The Respondent served in that role until he was removed in March 2019.

[65] Wu WS §6; Exhibits C-001 and C-016.

78.2    An agreement with the Respondent in which he would ensure that ZEG receive a certain interest rate from the investment, and the parties would share in the profits of the conversion shares if their value exceeded a certain amount.[66]

79.    On 26 September 2019, ZEG established the Claimant as an investment vehicle for the purpose of this investment.    Ms Joanne Yan Zhu ("**Ms Zhu**") served as the founding director of the Claimant from then until 6 May 2019, after which Mr Wu was appointed as the replacement director of the Claimant.[67]

80.    Shortly prior thereto:-

80.1    The Claimant and the Company entered into a Convertible Note Purchase Agreement dated 23 September 2016 ("**Convertible Note Purchase Agreement**"), under which the Company agreed to issue and sell, and the Claimant agreed to subscribe for and purchase, a convertible note with a principal value of US$220,000,000 ("**Convertible Note**")[68]; and

80.2    Concurrently, the Claimant, RPL and the Respondent entered into the Cooperation Agreement under which, *inter alia*, RPL and the Respondent agreed to pay interest to the Claimant and the Claimant agreed to share profits with RPL on conversion of the Convertible Note if certain conditions are met[69].

81.    It is the Claimant's case that, while the interest payable by the Company on the Convertible Note is 8% per annum, RPL and the Respondent agreed to a pay an additional interest of 2% per annum under section 1.1 of the Cooperation Agreement, thus giving a total "Basic Interests" of 10% per annum.    This higher rate of return, the Claimant says, was agreed to incentivize ZEG to make this investment.    In exchange for paying the said additional interest, RPL and the Respondent were given the opportunity to share the profits with the Claimant, under section 1.3 of the Cooperation

---

[66] Wu WS §§6-8; Exhibits C-009, C-010 and C-011.

[67] Wu WS §9; Exhibits C-012 and C-013.

[68] SOC §3; Wu WS §§22-28; Exhibit C-002.

[69] SOC §4; Wu WS §§10-16, §§19-21; Exhibit C-001.

HKIAC/A18222 – Final Award

Agreement, if the value of the shares upon conversion was over US$6.90.[70]

82.   Subsequently:-

82.1   On 3 October 2016, the Claimant, via an affiliate Caitong Funds SPC – ZHI US Special Opportunity Fund 1 SP, paid US$220,000,000 to the Company pursuant to the Convertible Note Purchase Agreement[71]; and

82.2   On the same day, the Company issued to the Claimant the Convertible Note, which provides that:- (a) the principal amount of US$220,000,000 plus interest of 8% per annum are payable to the Claimant on the maturity date of 3 October 2018; and (b) the Claimant has an option to convert the note into the Company's American Depository Shares at US$6.00 per share shortly before maturity[72].

83.   The above transactions were publicly announced by the Company in its SEC filings on 27 September 2016 and 4 October 2016[73].

84.   On 17 October 2016, the Company, on behalf of RPL and the Respondent, paid US$8,800,000 into an escrow account maintained at the China Merchants Bank ("**Escrow Account**"), jointly controlled by both sides, to guarantee payment obligations of RPL and the Respondent under sections 1.1 and 1.2 of the Cooperation Agreement[74].

85.   After the completion of these initial transactions, it was later agreed that the Company would partially repay a portion of the principal amount under the Convertible Note in the sum of US$88,000,000, leaving a balance of US$132,000,000.   To reflect this:-

85.1   On 9 November 2017, the Claimant and the Company entered into a Partial Redemption Agreement and Amendment to Convertible Note ("**Partial**

---

[70]  Wu WS §§14-16.

[71]  Wu WS §24; Exhibit C-019.

[72]  SOC §5; Wu WS §§29-34; Exhibit C-003.

[73]  Wu WS §§17, 25; Exhibits C-016 and C-020.

[74]  SOC §6; Wu WS §18; Exhibits C-017 and C-018.

[24]

Redemption Agreement")[75];

85.2   Pursuant to the Partial Redemption Agreement, the Company issued a revised Convertible Note to the Claimant for the outstanding principal amount of US$132,000,000 with the same maturity date of 3 October 2018 ("**Revised Convertible Note**")[76];

85.3   On 9 November 2017, the Claimant, RPL and the Respondent entered into the Amendment to Cooperation Agreement, *inter alia*, to reflect the partial redemption of the Convertible Note and to amend sections 1.1 and 1.2 of the Cooperation Agreement[77];

85.4   From 10 to 22 November 2017, the Company made total repayments of US$87,999,960 to the Claimant in 4 tranches, to reflect the agreed partial redemption of the Convertible Note in the total sum of US$88,000,000[78]; and

85.5   The Company made a public announcement of the repayment and the issuance of the Revised Convertible Note by its SEC filing dated 20 November 2017[79].

86.   It is the Claimant's case that the Respondent has defaulted on their payment obligations under the Amended Cooperation Agreement.   In gist, the Claimant contends that[80]:-

86.1   Since 9 November 2017, the Company has only paid a total of US$15,840,000 (including US$8,800,000 from the Escrow Account) as interest to the Claimant;

86.2   The Respondent and RPL have only paid US$5,280,000 under the Amended Cooperation Agreement to the Claimant;

---

[75] SOC §7; Wu WS §§43-47; Exhibit C-005.

[76] SOC §7; Wu WS §§48-52; Exhibit C-006.

[77] SOC §8; Wu WS §§40-42; Exhibit C-004.

[78] Wu WS §§35-38; Exhibits C-23 and C-24.

[79] Wu WS §39; Exhibit C-25.

[80] SOC §§9-23; Wu WS §§53-72.

86.3    The Claimant did not elect to convert the Revised Convertible Note into shares before the maturity of the Convertible Note (i.e. 3 October 2018);

86.4    By virtue of section 1.2 of the Amended Cooperation Agreement, the Respondent is liable to pay to it, as of 3 October 2018, the difference between the "Guaranteed Return" in the sum of US$264,000,000 and the "CB Return" in the sum of US$21,120,000 – i.e. the net principal sum of US$242,880,000;

86.5    Despite demands having been issued to the Company, the Respondent and RPL on 4 October 2018[81], the Claimant has not received any payment at all; and

86.6    The Respondent is liable to pay continuing interest on the said sum of US$242,880,000 either at the rate of 10% per annum pursuant to section 1.1 of the Cooperation Agreement or alternatively at the "*default penalty interest rate under Hong Kong law*" until full payment thereof.

87.    Based on the aforesaid, the Claimant seeks the following relief[82]:-

87.1    "*The Respondent shall pay the amounts which became due and payable to the Claimant on October 3, 2018 pursuant to the Amended Cooperation Agreement, in the total amount of USD 242,880,000*";

87.2    "*The Respondent shall pay to the Claimant the interest accrued on the unpaid amount under the Amended Cooperation Agreement from October 3, 2018 at the rate of 10% per annum (or such other rate as determined by the Tribunal), which as of March 18, 2019 equals USD 11,132,000, with interest continuing to accrue at the rate of USD 67,467 per day until the actual payment date*";

87.3    "*The Respondent shall pay all costs that the Claimant incurs during these arbitration proceedings, including counsel's fees*"; and

---

[81] Exhibit C-030.

[82] SOC §24.

[26]

87.4    *"Such further, other and consequential relief as may be just and expedient"*.

## E.    RESPONDENT'S NON-PARTICIPATION

88.    As mentioned above, the Respondent has not submitted any Defence and Counterclaim, evidence or substantive defence submissions despite many opportunities having been provided to him to do so under the Tribunal's procedural orders.    The Respondent has not provided any explanation to the Tribunal for its failure to do so.

89.    None of the emails sent by the Tribunal to the Respondent has been returned undelivered.    Moreover, as stated in §§28 and 42 above, the Respondent has contacted the Tribunal as regards certain procedural aspects of this arbitration.    Further, as suggested by the tracking records attached in **Annex A** hereto, many of the couriered letters from the Tribunal were signed for by someone in the Respondent's name.

90.    In view of the aforesaid, the Tribunal is satisfied that the Respondent was most likely aware of the existence of this arbitration and the various steps of these proceedings.

91.    The Respondent's non-participation does not prevent this arbitration from proceeding and the Tribunal from making an award.    Articles 26.2 and 26.3 of the Rules provide:-

> "26.2    If, within the period of time set by the arbitral tribunal, the Respondent has failed to communicate its written statement without showing sufficient cause for such failure, the arbitral tribunal may proceed with the arbitration.
>
> 26.3    If one of the parties, duly notified under these Rules, fails to present its case in accordance with these Rules including as directed by the arbitral tribunal, without showing sufficient cause for such failure, the arbitral tribunal may proceed with the arbitration and make and award on the basis of the evidence before it."

92.    Section 53 of the Arbitration Ordinance also empowers the Tribunal to issue an award in the absence of the Respondent:-

[27]

"Unless otherwise agreed by the parties, if, without showing sufficient cause, […]

(b) the respondent fails to communicate his statement of defence in accordance with article 23(1), the arbitral tribunal shall continue the proceedings without treating such failure in itself as an admission of the claimant's allegations;

(c) any party fails to appear at a hearing or to produce documentary evidence, the arbitral tribunal may continue the proceedings and make the award on the evidence before it."

93.  On the basis of these provisions, the Tribunal is satisfied that, despite the Respondent's substantive non-participation, it is appropriate to proceed with this arbitration and issue a final award on the merits on the basis of the evidence placed before it.

## F.   TRIBUNAL'S ANALYSIS AND DECISION

### F1.   *Relevant contractual provisions*

94.  It would be convenient to first set out the contractual provisions relevant to this dispute.

95.  The Cooperation Agreement provides, *inter alia*, as follows:-

"   *WHEREAS, NQ Mobile Inc., an exempted company incorporated under the laws of the Cayman Islands ("NQ") and Zhongzhi have, concurrently with the execution of this Agreement, entered into a convertible note purchase agreement (the "Purchase Agreement"), dated as of the date hereof, which provides, among other things, for the issuance, sale and purchase of the convertible note (the "Note") of principal amount of US$220,000,000 (the "Transaction")"*

"   *Section 1.1   Basic interests.   The Parties agree that the basic interests payable to Zhongzhi under this Transaction is 10% per annum of the principal amount under the Notes severally, agree to guarantee and pay to Zhongzhi the balance of the Basic Interests less the amount paid by NQ under the Note, from the*

[28]

*date hereof until the Maturity Date of the Note or such earlier or later date as the principal becomes due and payable as provided in the Note. The interest shall be payable semiannually in arrears on each Interest Payment Date (as defined in the Note). Accrued interest on the Note shall be computed on the basis of a 360-day year composed of twelve 30-day months and, for partial months, on the basis of actual days elapsed over a 30-day month.*

*Section 1.2    Interests upon maturity.    Upon the maturity of the Note, unless the Note is duly converted into Conversion ADSs in accordance with the terms and conditions set forth in the Note therein, RPL and Dr. Shi agree to, jointly and severally, guarantee and pay to Zhongzhi an additional accrued interests equal to two point five percent (2.50%) per annum of the principal amount outstanding under the Note, from the date hereof until the Maturity Date. Accrued interest on the Note shall be computed on the basis of a 360-day year composed of twelve 30-day months and, for partial months, on the basis of actual days elapsed over a 30-day month.*

*Section 1.3    Distribution of profits.    After the Conversion, in the event that the transaction price of the Conversion ADSs (the "Transaction Price") which duly sold by Zhongzhi is higher than US$6.90 per ADS (the "Benchmark Price"), for each ADS sold, Zhongzhi agrees to share with RPL fifty percent (50%) of the portion of the Transaction Price in excess of the Benchmark Price in a form agreed upon by Zhongzhi and RPL.    ZhongZhi shall provide its full ADS account information to RPL quarterly or as reasonably requested by RPL."*

96.    As to the Convertible Note, it provides, *inter alia*:-

"    *Subject to the terms and conditions of this Convertible Note (the "Note"), for good and valuable consideration received, NQ Mobile Inc., an exempted company incorporated under the laws of the Cayman Islands ("the "Company"), promises to pay to the order of Zhongzhi Hi-Tech Overseas Investments Ltd., a company incorporated under the laws of the People's Republic of China ... (such party and any permitted transferee, the "Holder"), the principal amount of US$220,000,000, plus accrued and unpaid interest thereon at the rate provided below, on October 3,*

[29]

*2018 (the "Maturity Date"), or such earlier or later date as may be otherwise provided herein, unless the outstanding principal, together with accrued interest, is settled in accordance with Article 3 of the Note.*

*The Note is issued pursuant to, an in accordance with, the Convertible Note Purchase Agreement, dated September 23, 2016 (the "Purchase Agreement"), between the Company and the Holder, and is subject to the provisions thereof. Capital terms used and not defined herein shall have the meaning set forth in the Purchase Agreement."*

*" 2.1 Interest Rate. The principal amount outstanding under the Note shall bear interest at a simple rate of eight percent (8.00%) per annum, from the date hereof until maturity or such earlier or later time as the principal becomes due and payable in accordance with Article 3 hereof, no interest shall accrue on the principal amount that is converted upon such conversion. Interest shall be payable semiannually in arrears on each Interest Payment Date. Accrued interest on the Note shall be computed on the basis of a 360-day year composed of twelve 30-day months and, for partial months, on the basis of actual days elapsed over a 30-day month."*

97.    The Amendment to Cooperation Agreement provides, *inter alia*, that:-

*" WHEREAS, the Parties entered into a Cooperation Agreement dated September 23, 2016 ("the Agreement");*

*WHEREAS, on the date hereof, NQ partially redeemed the principal amount of the Note.*

*Unless otherwise defined, capitalized terms used herein have the meanings ascribed to them in the Agreement."*

*"1. Amendment.*

*(a) Section 1.2 (Interests upon maturity) is amended and replaced in its entirety by*

[30]

*the following:*

*'Section 1.2 Payment upon maturity.*

*(a) For the purpose of this section, "<u>Guaranteed Return</u>" means US$264,000,000 and "<u>CB Return</u>" means the aggregate amount of (i) the principal amount of the Note repaid by NQ, (ii) Basic Interests paid by NQ, RPL and Dr. Shi, and (iii) the market value of Conversion ADSs as determined by multiplying the Last Reported Sale Price of ADSs on October 2, 2018 by the number of Conversion ADSs.*

*(b) On October 3, 2018, RPL and Dr. Shi shall, jointly and severally, pay to Zhongzhi the difference between Guaranteed Return and CB Return in the event that Guaranteed Return exceeds CB Return; Zhongzhi shall pay to [RPL and Dr. Shi] the difference between CB Return and Guaranteed Return in the event that CB Return exceeds Guaranteed Return.'*

*(b) Section 1.3 (Distribution of profits is amended and replaced in its entirety by the following:*

*'Section 1.3 [Reserved]'*

*2. **Effect**.*

*(a) This Amendment shall be deemed incorporated into, and form a party of, the Agreement and have the same legal validity and effect as the Agreement.*

*(b) Except as expressly amended hereby, all terms and provisions of the Agreement shall remain in force and effect, and all references to the Agreement shall hereafter refer to the Agreement as amended by this Amendment and as it may hereafter be further amended or restated."*

## F2.   Findings of fact

98.   Having carefully considered the Claimant's pleaded case and the supporting evidence referred to in §§74-87 above, and absent contrary evidence and submissions from the Respondent, the Tribunal is prepared to make the following **FINDINGS** of fact:-

   98.1   On 23 September 2016, the Convertible Note Purchase Agreement and the Cooperation Agreement were entered into between the parties thereto;

   98.2   On 3 October 2016, pursuant to the Convertible Note Purchase Agreement, the Claimant paid US$220,000,000 to the Company and the Company issued the Convertible Note to the Claimant on the same day;

   98.3   On 17 October 2016, the Company, on behalf of RPL and the Respondent, paid US$8,800,000 into the Escrow Account to guarantee the latter's payment obligations under sections 1.1 and 1.2 of the Cooperation Agreement;

   98.4   On 9 November 2017, the Partial Redemption Agreement and the Amendment to Cooperation Agreement were duly entered into by the parties thereto;

   98.5   Pursuant to the Partial Redemption Agreement, the Company repaid US$88,000,000 to the Claimant and issued the Revised Convertible Note to it for the reduced principal amount of US$132,000,000 with the same maturity date of 3 October 2018;

   98.6   Neither the Convertible Note nor the Revised Convertible Note has been converted into the Company's ADSs;

   98.7   The total interest paid by the Company directly to the Claimant pursuant to the Convertible Note and the Revised Convertible Note was US$22,212,913.22[83];

   98.8   The total interest paid to the Claimant by RPL and/or the Respondent pursuant

---

[83]   Wu WS §60; Exhibit C-31.

to the Cooperation Agreement and the Amended Cooperation Agreement, by way of deduction from the Escrow Account, was US$8,800,000[84]; and

98.9   As of the date hereof, the Company has not repaid the Claimant any part of the principal amount of US$132,000,000 under the Revised Convertible Note.

99.   On the basis of these findings, the Tribunal proceeds to consider the Claimant's claim for relief pursuant to section 1.2 of the Amended Cooperation Agreement.

### F3.   *Claim for principal sum*

100.   While the Respondent has not objected to the Claimant's calculation under section 1.2 of the Amended Cooperation Agreement, the Claimant bears the burden to satisfy the Tribunal that its interpretation of the agreement (which is a question of law) is correct.

101.   By reference to section 1.2 of the Amended Cooperation Agreement, the Claimant argues that, on the maturity date of the Revised Convertible Note (3 October 2018)[85]:-

101.1   The "*principal amount of the Note repaid by NQ*" was <u>zero</u>, on the basis that the term means the principal amount of the Revised Convertible Note issued following partial redemption of the Convertible Note (i.e. US$132,000,000);

101.2   The "*Basic Interests paid by NQ, RPL and Dr. Shi*" was <u>US$21,120,000</u>, on the basis that interest paid under the Revised Convertible Note was included, and interest paid on the repaid amount of US$88,000,000 was excluded; and

101.3   The "*market value of Conversion ADSs*" was <u>zero</u>, on the basis that no conversion of the Convertible Note or the Revised Convertible Note took place.

102.   The Claimant accordingly argues that the Respondent is liable to pay, under section 1.2 of the Amended Cooperation Agreement, the net sum of **US$242,880,000** (i.e.

---

[84]   Wu WS §§63-64; Exhibit C-32.

[85]   Wu WS §§57-71; Claimant's Clarification §§3-20.

"*Guaranteed Return*" of US$264,000,000 minus "*CB Return*" of US$21,120,000 minus "*market value of Conversion ADSs*" of US$0)[86].

103. Although the Tribunal agrees that the "*market value of Conversion ADSs*" under section 1.2 of the Amended Cooperation Agreement should be zero, it has difficulty accepting the Claimant's calculation of the "*principal amount of the Note repaid by NQ*" and the "*Basic Interests paid by NQ, RPL and Dr. Shi*" thereunder.

104. Starting with "*principal amount of the Note repaid by NQ*":-

   104.1 It is not disputed that the Amendment to Cooperation Agreement contains no express definition of the term "*Note*" or "*principal amount of the Note*"[87];

   104.2 However, section 2(b) of the same agreement provides that "*all terms and provisions of the* [Cooperation Agreement] *shall remain in force and effect*"[88];

   104.3 In the Cooperation Agreement, the term "*Note*" refers to the Convertible Note issued pursuant to the Convertible Note Agreement.   In section 2.1 of and Annex A to the Convertible Note Agreement, the principal value and principal amount of the "*Note*" are both stated as the fixed sum of US$220,000,000;

   104.4 There is therefore little question that, even though the definition "*(the "Note")*" in the first recital to the Cooperation Agreement was positioned before the phrase "*principal amount of US$220,000,000*", the parties objectively intended that the term "*Note*" means the one with a principal amount of US$220,000,000;

   104.5 With that in mind, what remains in question is – was the term "*Note*" in section 1.2 of the Amended Cooperation Agreement objectively intended by the parties to take a different meaning, in particular in relation to its "*principal amount*"?

---

[86] SOC §§17-18; Wu WS §71.

[87] SOC §16(a).

[88] Claimant's Clarification §3.

104.6   The Claimant argues that it was, and principally relies on (a) section 7.3 of the Convertible Note providing for the consensual amendment and restatement of its terms, and (b) the fact that the recognition of the partial redemption of the Convertible Note in the recital to the Amendment to Cooperation Agreement[89];

104.7   On this basis, the Claimant submits that[90]:-

> "*9. As the partial redemption is recognized in the Recitals [of the Amended Cooperation Agreement], the parties' use of the term "Note" in Clause 1(a) refers to the Note as then-currently outstanding. This is the amended and restated Note in the principal amount of US$132,000,000.*
>
> *10. Therefore, the "principal amount" in item (i) of the definition of "CB Return" is US$132,000,000, not US$220,000,000, as the (original) Note had been amended and restated at the time of the Amendment to Cooperation Agreement.*"

104.8   Although the Tribunal understands the crux of the Claimant's argument, it is unable to agree with the Claimant in this regard, for at least 3 reasons:-

104.9   **First**, the Claimant's interpretation does not accord with the language of the Amendment to Cooperation Agreement, which does not define the "*Note*" but adopts its definition from the Cooperation Agreement.   As per §104.4 above, the Tribunal considers it to be clear that the term "*Note*" in the Cooperation Agreement plainly refers to one with a principal amount of US$220,000,000;

104.10 **Second**, the Claimant's interpretation would lead to internal inconsistency within the Amendment to Cooperation Agreement, particularly with the phrase "*on the date hereof, NQ partially redeemed the principal amount of the Note*" in its recital.   Given the express reference in that phrase to "*partially redeemed*", the ordinary meaning of the term "*principal amount of the Note*"

---

[89]   Claimant's Clarification §§3-7.

[90]   Claimant's Clarification §§9-10.

must be the amount *before* partial redemption (i.e. US$220,000,000) and not the amount *after* partial redemption (i.e. US$132,000,000). If this is correct, it is hard to understand why the same phrase "*principal amount of the Note*" would bear a different meaning (i.e. US$132,000,000) in section 1(a) of the same agreement (seeking to replace section 1.2 of the Cooperation Agreement). In the Tribunal's view, the "*principal amount of the Note*" in section 1.2 of the Amended Cooperation Agreement clearly refers to the sum of US$220,000,000;

104.11 **Third**, even assuming *arguendo* that the Claimant' interpretation were correct, it is obvious that the Claimant's entitlement at maturity under section 1.2 of the Amended Cooperation Agreement (i.e. after partial redemption) could be substantially higher than its entitlement under sections 1.1 and 1.2 of the Cooperation Agreement (i.e. with no partial redemption). This is indeed illustrated by the calculations set out in the Tribunal's email to the Parties dated 22 July 2019 (see §63 above), a copy of which is attached at **Annex B** hereto;

104.12 In the Claimant's Further Clarification submitted on 26 July 2019, it did not dispute the Tribunal's calculations. However, purportedly to explain why the partially redeemed amount of US$88,000,000 should not be included in the "*principal amount of the Note repaid by NQ*", the Claimant went on to argue:-

> "*3. The Claimant's submission that the US$ 88,000,000 partial redemption amount should not be included in the calculation of CB Return is based on its commercial understanding of the parties' intention at the time of execution of the Amendment to Cooperation Agreement. As set forth in paragraphs 3 to 11 of the Clarification, given the timing of the execution of the Amendment to Cooperation Agreement contemporaneously with the Partial Redemption Agreement and Amended Convertible Note, the Claimant understands the definition of "Note" in the Amendment to Cooperation Agreement to refer to the US$ 132,000,000 principal Note already reflecting the US$ 88,000,000 partial redemption.*
>
> *4. The Claimant has consistently held the above interpretation as reflected*

[36]

> in the Demands for Payment dated 4 October 2018 sent separately to Dr.
> Shi and RPL (**Exhibit C-30**) and through this arbitration. Unfortunately,
> the Claimant has been unable to identify any further evidence regarding
> the commercial understanding of the parties at the time of execution of the
> Amendment to Cooperation Agreement."

104.13 Though there is nothing that casts doubt on the Claimant's explanation[91], the
Tribunal does not accept that the Claimant's own subjective understanding of a
contractual term would assist contractual interpretation, which is an objective
exercise focused on ascertaining the parties' common intention;

104.14 As the Claimant accepts, there was no evidence to explain why the repaid
amount of US$88,000,000 should be excluded from the calculation, which
would result in the Claimant receiving substantially more upon maturity after
partial redemption of the Convertible Note than where no partial redemption has
ever occurred. Such a result, in the absence of any objective evidence, would
seem to the Tribunal to be commercially implausible or unreasonable;

104.15 In deciding whether to accept the Claimant's interpretation, it is proper for the
Tribunal not only to consider the language used and the factual context, but also
whether such interpretation would lead to a commercial implausible or
unreasonable result. Having taken all the above factors and circumstances into
account, the Tribunal does not accept the Claimant's interpretation of "*principal
amount of the Note*" under section 1.2 as meaning the sum of US$132,000,000,
and instead **HOLDS** that the same term means the sum of US$220,000,000.

105. Coming to the phrase "*Basic Interests paid by NQ, RPL and Dr. Shi*":-

105.1 The Claimant's figure of US$21,120,000 is again calculated on the premise that
all interest paid on the partial repayment of US$88,000,000 should be excluded.
In his witness statement, Mr Wu purported to apportion interest payments

---

[91] Even assuming that the Claimant's submissions were supported by factual evidence.

received by the Claimant to:- (a) the partially redeemed principal sum of US$88,000,000 (which were excluded in the calculation) and (b) the remaining principal of US$132,000,000 (which were included in the calculation);

105.2   Having carefully studied Mr Wu's evidence and the Claimant's Clarification[92], the Tribunal does not understand why the phrase *"Basic Interests paid by NQ, RPL and Dr. Shi"* under section 1.2 of the Amended Cooperation Agreement excludes interest paid on the redeemed principal amount of US$88,000,000, particularly when:- (a) the Amended Cooperation Agreement does not expressly say so, and (b) the phrase's definition, which is to be found in section 1.1 of the Cooperation Agreement and incorporated therein[93], simply refers to *"10% per annum of the principal amount under the Notes"* (i.e. US$220,000,000);

105.3   It is clear that the Claimant's purported apportionment of the *"Basic Interests"* is based on its interpretation of the *"principal amount of the Note"* under section 1.2 as meaning US$132,000,000[94].   For the same reasons given above, the Tribunal is unable to accept this interpretation.   It follows that, accordingly:-

(a)   the Tribunal **HOLDS** that *"Basic Interests paid by NQ, RPL and Dr. Shi"* in section 1.2 of the Amended Cooperation Agreement means all interests payments received by the Claimant pursuant to the Convertible Note, the Revised Convertible Note, the Cooperation Agreement and the Amended Cooperation Agreement; and

(b)   the Tribunal **FINDS** on the facts that the *"Basic Interests paid by NQ, RPL and Dr. Shi"* in section 1.2 of the Amended Cooperation Agreement is therefore US$31,012,913.22 (i.e. US$22,212,913.22 + US$8,800,000).

106.   In conclusion, the Tribunal **HOLDS** that the Respondent's liability under section 1.2 of the Amended Cooperation Agreement is **US$144,987,086.78** (i.e. *"Guaranteed Return"*

---

[92]   At §§16-20 thereof.

[93]   Claimant's Clarification §12.

[94]   Claimant's Clarification §§14-15.

of US$264,000,000 <u>minus</u> "*CB Return*" of US$119,012,913.22 (i.e. US$88,000,000 + US$31,012,913.22) <u>minus</u> "*market value of Conversion ADSs*" of US$0).

### F4.   *Claim for interest*

107.   The Claimant also claims interest on such principal sum at 10% per annum or the "*default penalty rate under Hong Kong law*" from 3 October 2018 until payment[95].

108.   The Claimant's legal basis for such claim is Article 79(1) of the Arbitration Ordinance, which empowers the Tribunal to award discretionary interest on sums awarded[96].

109.   While accepting that "*the parties have not made any express agreement regarding the calculation of interests on amounts outstanding under the Amended Cooperation Agreement*" and that "*the Tribunal has discretion to determine the rate and time period for which to apply interest*"[97], the Claimant relies on the rate of 10% per annum set out in section 1.1 of the Cooperation Agreement and argues that[98]:-

109.1   "*While the Claimant recognizes that Section 1.1 of the Cooperation Agreement only expressly ties the Basic Interests to the principle [sic] of the Convertible Note, this Basic Interests rate can be seen as the reasonable expectation of the parties on the interest to be received by the Claimant for debts owed*"; and

109.2   "*... the 10% annual interest rate should be applied to the Outstanding Debt from the Maturity Date until the date of payment as it most closely reflects the parties' understanding in the Cooperation Agreement.   The Claimant further submits that 10% is a reasonable interest rate and is not excessive.*"

110.   The Tribunal agrees with the Claimant that, under section 1.1 of the Cooperation Agreement, the parties' intention for interest payment on any outstanding principal of

---

[95]   SOC §§19-23, 24(b); Post-Hearing Submission §10.

[96]   Post-Hearing Submission §13.

[97]   Post-Hearing Submission §14.

[98]   Post-Hearing Submission §§16, 18.

the Convertible Note is to be calculated at 10% per annum even after the maturity date.

111. However, the Claimant's claim herein is based on section 1.2 of the Amended Cooperation Agreement, which is described as a "*payment upon maturity*", but not for outstanding principal amount under the Revised Convertible Note with interest thereon.

112. In the absence of any evidence, it is unclear to the Tribunal whether the parties intended any sums payable under section 1.2 that is above and beyond the outstanding principal amount of the Revised Convertible Note would also attract interest of 10% per annum.

113. The Claimant could, in theory, apportion its interest claim in respect of the section 1.2 payment as:- (a) 10% per annum on US$132,000,000; and (b) "*default penalty interest under Hong Kong law*" on the balance amount.   But this is not what the Claimant has claimed.   In any event, such a claim may give rise to the complicated question of whether it is for compound interest[99], which requires justification in its own right.

114. The Tribunal therefore **HOLDS** that it is more appropriate to award discretionary interest, instead of 10% per annum under section 1.1 of the Cooperation agreement.

115. Citing *Waddington Ltd v. Chan Chun Hoo Thomas & Ors* [2016] HKEC 1127 and *Tadjudin Sunny v. Bank of America* [2016] HKEC 1128, the Claimant claims "*pre-judgment*" interest rate of 1% over the HSBC best lending rate (5.125%) and "*post-judgment*" interest rate determined by the Chief Justice of Hong Kong (8.125%)[100].

116. While the Tribunal agrees with this approach in principle, the Claimant's Counsel has not explained why it has chosen the HSBC best lending rate for <u>Hong Kong Dollar</u> of 5.125% per annum[101], when the Claimant's claim herein is for <u>United States Dollar</u>.

---

[99] This is because the balance of the section 1.2 payment is, in substance, already in the nature of interest.

[100] Post-Hearing Submission §§19-23.   The Tribunal understands the Claimant's references to "pre-judgment" interest and "post-judgment" interest as meaning pre-award interest and post-award interest, respectively.

[101] Exhibit CL-04.

117. According to the internet website provided by the Claimant[102], the HSBC best lending rate for United States Dollar is currently 4.5% per annum.   Adopting the above approach, the Tribunal is prepared to award pre-award interest at 5.5% per annum.

118. For all these reasons, the Tribunal **HOLDS** that it is appropriate to award:-

   118.1   simple interest on the sum of US$144,987,086.78 at the rate of 5.5% per annum from 3 October 2018 to the date of this award; and

   118.2   simple interest at the judgment rate determined by the Chief Justice of Hong Kong from time to time (currently 8.125% per annum) on all amounts awarded to the Claimant in this arbitration from the date of the award until payment.

## G.   COSTS

119. The final part of the Claimant's claim is for "*all costs that the Claimant incurs during these arbitration proceedings, including counsel's fees*"[103].

### G1.   *Applicable rules and law on costs*

120. The following Articles under the Rules are relevant to the question of costs:-

   "34.1      The arbitral tribunal shall determine the costs of the arbitration in one or more orders or awards. The term "costs of the arbitration" includes only:
   (a)      the fees of the arbitral tribunal, as determined in accordance with Article 10;
   (b)      the reasonable travel and other expenses incurred by the arbitral tribunal;
   (c)      the reasonable costs of expert advice and of other assistance required by the arbitral tribunal, including fees and expenses of any tribunal secretary;
   (d)      the reasonable costs for legal representation and other assistance, including fees and expenses of any witnesses and experts, if such costs were claimed during the arbitration; and
   (e)      the Registration Fee and Administrative Fees payable to HKIAC in

---

[102] Post-Hearing Submission §21 (footnote 12).

[103] SOC §24(c).

accordance with Schedule 1, and any expenses payable to HKIAC."

"34.3    The arbitral tribunal may apportion all or part of the costs of the arbitration referred to in Article 34.1 between the parties if it determines that apportionment is reasonable, taking into account the circumstances of the case."

121.    The Arbitration Ordinance also provides that:-

> **"74.    Arbitral tribunal may award costs of arbitral proceedings**
>
> > (1) An arbitral tribunal may include in an award directions with respect to the costs of arbitral proceedings (including the fees and expenses of the tribunal).
> >
> > (2) The arbitral tribunal may, having regard to all relevant circumstances (including the fact, if appropriate, that a written offer of settlement of the dispute concerned has been made), direct in the award under subsection (1) to whom and by whom and in what manner the costs are to be paid.
> >
> > (3) The arbitral tribunal may also, in its discretion, order costs (including the fees and expenses of the tribunal) to be paid by a party in respect of a request made by any of the parties for an order or direction (including an interim measure).
> >
> > (4) The arbitral tribunal may direct that the costs ordered under subsection (3) are to be paid forthwith or at the time that the tribunal may otherwise specify.
> >
> > (5) Subject to section 75, the arbitral tribunal must—
> >
> > > (a) assess the amount of costs to be awarded or ordered to be paid under this section (other than the fees and expenses of the tribunal); and
> > >
> > > (b) award or order those costs (including the fees and expenses of the tribunal).
> >
> > (6) Subject to subsection (7), the arbitral tribunal is not obliged to follow the scales and practices adopted by the court on taxation when assessing the amount of costs (other than the fees and expenses of the tribunal) under subsection (5).
> >
> > (7) The arbitral tribunal—
> >
> > > (a) must only allow costs that are reasonable having regard to all the circumstances; and
> > >
> > > (b) unless otherwise agreed by the parties, may allow costs

[42]

> incurred in the preparation of the arbitral proceedings prior to the commencement of the arbitration ..."

**"78.    Liability to pay fees and expenses of the arbitral tribunal**

(1) The parties to proceedings before an arbitral tribunal are jointly and severally liable to pay to the tribunal reasonable fees and expenses, if any, of the tribunal that are appropriate in the circumstances.

(2) Subsection (1) has effect subject to any order of the court made under section 62 or any other relevant provision of this Ordinance.

(3) This section does not affect—

    (a) the liability of the parties as among themselves to pay the costs of the arbitral proceedings; or

    (b) any contractual right or obligation relating to payment of the fees and expenses of the arbitral tribunal ... "

122.   In light of the above, the Tribunal is satisfied that it does have the power to make an award of costs incurred in connection with this arbitration.

### G2.    *Determination and assessment of costs*

123.   In support of its claim for costs, the Claimant requests the Tribunal to adopt the common approach of costs following the event[104].   Specifically, the Claimant submits that:-

> "... *it has conducted this arbitration in an expeditious manner, and no such extraordinary circumstances have occurred that would result in a departure from the general principle of 'costs follow the event.*"

124.   In the absence of contrary submissions from the Respondent, the Tribunal accepts the Claimant's suggestion of costs following the event.   Given the Tribunal's above findings and holdings in the Claimant's favour, the Tribunal **HOLDS** that the Claimant should also be awarded its reasonable costs and expenses incurred herein.

125.   On the assessment of costs, the Tribunal finds that the appropriate test is that set out in

---

[104] Claimant's Costs Submission §§4-5.

section 74(7)(a) of the Arbitration Ordinance, i.e. whether the costs "are reasonable having regard to all the circumstances." In answering this question, the Tribunal also finds it appropriate to have regard to the principle of proportionality.

Claimant's costs statement

126.    According to the Claimant's Costs Submission setting out the respective hourly rates of the Claimant's legal representatives and a costs summary[105], it has incurred:-

126.1  RMB 708,890 (US$ equivalent of US$103,273.57) in legal fees;

126.2  RMB 24,030 (US$ equivalent of US$3,500.77) in travel expenses for hearing;

126.3  HK$2,085 (US$ equivalent of US$267.29) in hearing room rental; and

126.4  HK$5,275 (US$ equivalent of US$676.24) in court reporter's fees.

127.    Having carefully considered these materials, the Tribunal agrees that these items do fall within Article 34.1 of the Rules and that the respective amounts are reasonable and proportionate in the circumstances, particularly in view of the magnitude of the sum in dispute. For these reasons, the Tribunal **HOLDS** that the Respondent shall bear and pay the Claimant's costs and expenses in the sum of **US$107,717.87** as aforesaid.

Registration and Administrative Fees of the HKIAC

128.    According to HKIAC's Statement of Account herein dated 14 August 2019, the Claimant has paid a Registration Fee in the sum of HK$7,985 and a deposit for the HKIAC Administrative Fee in the sum of HK$399,985. On 20 August 2019, HKIAC informed the Tribunal that it had determined the Administrative Fee at HK$399,970 and that it would not request payment for the shortfall in the Registration Fee (HK$15).

---

[105] A copy of these summaries are attached at **Annex C** hereto.

129.   The Registration Fee and the HKIAC Administrative Fee aforesaid do fall within the meaning of "costs of the arbitration" pursuant to Article 34.1(e) of the Rules.   As the Tribunal has held in favour of the Claimant in this arbitration, the Tribunal accordingly **HOLDS** that the Respondent shall bear and pay these fees.

130.   For convenience, the Tribunal considers it appropriate to convert these items into US$ for the purpose of this Award.   Applying the current conversion rate of US$1 = HK$7.85, these fees are converted to the equivalent amount of **US$51,968.79**.

Fees and expenses of the Tribunal

131.   As of today, the Tribunal has issued 4 fee notes to the HKIAC in the total sum of **HK$300,510** for fees and expenses incurred in this arbitration, comprising:-

130.1   Fee Note no. 039/2019 for professional fees in the sum of HK$69,000;

130.2   Fee Note no. 066/2019 for professional fees in the sum of HK$229,000;

130.3   Fee Note no. 040/2019 for expenses in the sum of HK$1,356; and

130.4   Fee Note no.067/2019 for expenses in the sum of HK$1,154.

132.   There is no question that these items fall within "costs of arbitration" pursuant to Articles 34.1(a) and (b) of the Rules.   As the Tribunal has held in favour of the Claimant, the Tribunal **HOLDS** that the Respondent shall bear and pay these sums.

133.   For convenience, the Tribunal considers it appropriate to convert these items into US$ for the purpose of this Award.   Applying the current conversion rate of US$1 = HK$7.85, these fees are converted to the equivalent amount of **US$38,282.00**.

Summary on costs

134.   For the above reasons, the Tribunal **DETERMINES** that the total assessed amount of

costs of this arbitration to be the sum of **US$197,968.66**, comprising:-

134.1 Claimant's costs and expenses of US$107,717.87;

134.2 Registration and Administrative Fees of HKIAC of US$51,968.79; and

134.3 Fee and expenses of the Tribunal of US$38,282.00.

Interest on costs

135. As was made clear in the Post-Hearing Submission, the Claimant claims, *inter alia*, interest "*on the total amount awarded to the Claimant in the award*". The Tribunal understands this as covering a claim for interest on any costs awarded to the Claimant.

136. The Tribunal is satisfied that it does have the power under section 80 of the Arbitration Ordinance to award such interest and, absent any submissions to the contrary, **DETERMINES** that it is appropriate to order the Respondent to pay interest on costs.

Deposits received by HKIAC

137. Pursuant to Article 41.6 of the Rules, the Tribunal hereby attaches at **Annex D** a Statement of Account of the deposits received by the HKIAC as of 20 August 2019.

138. As shown by this Statement of Account, the Claimant has been the only party which has paid HKIAC's Registration Fee and Administrative Fee as well as all deposits towards the fees and expenses of the Tribunal. In view of the Tribunal's above holdings, the Respondent shall be required to reimburse the Claimant for these amounts.

*(The remainder of this page is intentionally left blank.)*

[46]

## H.   FINAL AWARD

139.   Having carefully considered the entirety of the Parties' evidence and submissions
placed before the Tribunal, and for the reasons set forth above, the Tribunal **FINALLY:-**

(1)   **ORDERS** that the Respondent forthwith pays the Claimant the sum of
US$144,987,086.78, pursuant to section 1.2 of the Amended Cooperation
Agreement; and

(2)   **ORDERS** that the Respondent pays the Claimant simple interest on the sum of
US$144,987,086.78 at 5.5% per annum from 3 October 2018 to the date of this
award, and thereafter at the judgment rate determined by the Chief Justice of
Hong Kong from time to time (currently 8.125% per annum) until payment in
full, pursuant to sections 79 and 80 of the Arbitration Ordinance (Cap. 609); and

(3)   **ORDERS** that the Respondent forthwith pays the Claimant the sum of
US$197,968.66, being the costs of this arbitration within the meaning of Article
34 of the Rules, together with simple interest thereon at the judgment rate
determined by the Chief Justice of Hong Kong from time to time (currently
8.125% per annum) from the date of this award until payment in full, pursuant
to section 80 of the Arbitration Ordinance (Cap. 609).

140.   Save as expressly provided for and awarded in §139 above, the Tribunal further
**ORDERS** that all other claims and counterclaims, if any, be dismissed.

Made in Hong Kong this 23 day of August 2019.

**DR. BENNY LO**
**Sole Arbitrator**

[47]

**Annex A**

**Courier tracking records**

**Annex A
No.1**

 **EXPRESS**
順豐速運

Home (../../index.html)   Products and Services   Other Services   Help Center   About Us

(../../index.html)

Login (https://i.sf-express.com/hk/en/login.html) | Register (https://i.sf-express.com/hk/en/user/register/register.html)   (http://origin.sf-express.com

## Help Center

| | |
|---|---|
| Shipping + | |
| Track & Trace | |
| Order way + | |
| Rates & Transit Time (../price/) | |
| Service Coverage (../range/) | |
| Find a Service Point (../store/) | |
| Prohibited Items + | |
| Customer Area + | |
| S.F.Network + | |
| Other Enquiry + | |

803137166647      🗑 query

803137166647   ✕

*For all the Self Pick-up Service at S.F. Service Network, SMS notification MUST be presented to our S.F. representative for verification.

Track with WeChat

### Hong Kong···▸Beijing

803137166647    SF Standard Express

2019-01-28 08:29    Signed by 3rd party (前台). Thank you for using SF Express. Looking forward to serving you again

Signed off

**2019-01-28 Monday**

| | |
|---|---|
| 08:29:50 | Signed by 3rd party (前台). Thank you for using SF Express. Looking forward to serving you again |
| 06:56:38 | Out of delivery (Courier:侯松林 Contact NO.:13810677365) |

**2019-01-26 Saturday**

| | |
|---|---|
| 13:16:38 | Failed to deliver the shipment due to weekends or holidays. We will arrange a second delivery on a working day. |
| 13:09:06 | Out of delivery (Courier:李明 Contact NO.:13811509243) |
| 13:02:11 | The shipment is on delivery.(Courier Name:王相秋,Courier Phone:18611714529) |
| 13:02:11 | Shipment arrive at 【Beijing Anding Gate Service Point】 |
| 05:58:11 | Departed |
| 05:45:15 | Shipment loaded at 【Beijing Shunyi Distribution Center】, prepare to send to 【Beijing Anding Gate Service Point】 |
| 02:39:11 | Shipment arrive at 【Beijing Shunyi Distribution Center】 |
| 02:17:00 | Departed |
| 01:28:09 | Shipment loaded at 【Beijing Capital Airport Distribution Center 2】, prepare to send to 【Beijing Shunyi Distribution Center】 |

**2019-01-25 Friday**

| | |
|---|---|
| 19:40:09 | Shipment arrive at 【Beijing Capital Airport Distribution Center 2】 |
| 08:53:44 | Shipment arrive at 【Ningbo Main Distribution Center】 |
| 08:30:38 | Shipment loaded at 【Ningbo Yinzhou Customs Affairs Office】, prepare to send to 【Ningbo Main Distribution Center】 |
| 03:36:34 | Shipment arrive at 【Ningbo Yinzhou Customs Affairs Office】 |

**2019-01-24 Thursday**

| | |
|---|---|
| 22:06:15 | Shipment loaded at 【Hongkong General Distribution Centre】, prepare to send to 【Ningbo Yinzhou Customs Affairs Office】 |
| 22:05:20 | Shipment arrive at 【Hongkong General Distribution Centre】 |
| 21:47:07 | Shipment loaded at 【Hong Kong Tsing Yi Distribution Center】, prepare to send to 【Hongkong General Distribution Centre】 |
| 20:04:59 | Shipment arrive at 【Hong Kong Tsing Yi Distribution Center】 |

| | |
|---|---|
| 19:47:08 | Departed |
| 19:46:41 | Shipment loaded at 【香港中環德輔道中營業點】, prepare to send to 【Hong Kong Tsing Yi Distribution Center】 |
| 15:37:14 | S.F. Express has picked up the shipment |

Free appointment for door-to-door pickup

---

**Products and Services**

Express (../../products_services/express_service/mainland_area/standard_express_service/)

Warehousing and Distribution Services (../../products_services/storage_service/storage_services/standard_storage_distribution_center/)

Cold Chain Services (../../products_services/cold_service/temperature_control_storage_distribution_center/temperature_control_storage_distribution_center/)

**Online Service**

Enter the online customer service (S.F. Express (Hong Kong)

WeChat ID:SF_Express-HK





**Other Services**

e-Store (../../other_services/e-Store/in...

S.F. Stores (../../other_services/s... statio

EF Locker

:es/intelligent

r_services/s...

**Mobile appli...**

QR code to

---

(http://www.sf-tech.com.cn/) | (http://dengta.sf-express.com/index) | (http://www.sf-airlines.com/sfa/zh/index.html) | (http://www.sfbest.com) | (http://intl.sf-express.com/) | (http://www.sfbuy.com/ind... | (http:/

Terms of Use (../../use_clause/) | Service Network (../../services_network/) | Privacy Policy (../../privacy_policy/privacy_policy.html)

Copyright © 2017 SF Express. All rights reserved.粵 ICP 备08034243号 (http://www.m...



(http://webcert.cnmstl.net/cert/code?sn=c6cc6af3fac440c28901c15a104582fe) (http://www.sznet110.gov.cn/webrecord/innernet/Welcome.jsp?bano=4403101900826)

(http://www.sznet110.gov.cn/index.jsp) (http://szcert.ebs.org.cn/B943BEFD-EF5E-4747-AD73-B875A1FC5CC7)



English          Contact Center          Country/Region Profile

## Track DHL Express Shipments

**Annex A No.2**

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

### Result Summary

**Waybill: 5741194163**

**Signed for by: SHI WENYONG**
Get Signature Proof of Delivery

**Monday, February 11, 2019 at 16:59**
**Origin Service Area:**
 HONG KONG - HONG KONG - HONG KONG
**Destination Service Area:**
 BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC

1 Piece

| | Monday, February 11, 2019 | Location | Time | Piece |
|---|---|---|---|---|
| 12 | Delivered - Signed for by: SHI WENYONG | BEIJING | 16:59 | 1 Piece |
| 11 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 09:34 | 1 Piece |
| | **Sunday, February 03, 2019** | **Location** | **Time** | **Piece** |
| 10 | Address information needed; contact DHL | BEIJING - CHINA, PEOPLES REPUBLIC | 10:10 | 1 Piece |
| 9 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:31 | 1 Piece |
| 8 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:57 | 1 Piece |
| 7 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:55 | 1 Piece |
| 6 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:17 | 1 Piece |
| 5 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:22 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 02:51 | 1 Piece |
| | **Saturday, February 02, 2019** | **Location** | **Time** | **Piece** |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 20:36 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 16:21 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 14:01 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please  contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group



English          Contact Center          Country/Region Profile

**Annex A No.3**

# Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| **Waybill: 3464557725** | **Monday, February 18, 2019 at 14:31** | 1 Piece |
|---|---|---|
| Signed for by: SHIWEN YONG | **Origin Service Area:** | |
| Get Signature Proof of Delivery | HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** | |
| | BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| **Monday, February 18, 2019** | **Location** | **Time** | **Piece** |
|---|---|---|---|
| 12 | Delivered - Signed for by: SHIWEN YONG | BEIJING | 14:31 | 1 Piece |
| 11 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 09:44 | 1 Piece |
| 10 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:01 | 1 Piece |

| **Sunday, February 17, 2019** | **Location** | **Time** | **Piece** |
|---|---|---|---|
| 9 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 13:49 | 1 Piece |
| 8 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 13:49 | 1 Piece |
| 7 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:17 | 1 Piece |
| 6 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:04 | 1 Piece |
| 5 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 02:49 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 00:26 | 1 Piece |

| **Saturday, February 16, 2019** | **Location** | **Time** | **Piece** |
|---|---|---|---|
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:03 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 11:45 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 09:45 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please  contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group



簡體中文  English  繁體中文        Contact DHL Express        Contact Center        Country/Region Profile        DHL Global

# Track DHL Express Shipments

**Annex A**
**No.4**

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| Waybill: 8208330314 | Tuesday, February 26, 2019 at 14:31 | 1 Piece |
|---|---|---|
| Signed for by: SHIWENYONG | **Origin Service Area:** HONG KONG - HONG KONG - HONG KONG **Destination Service Area:** BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| | Tuesday, February 26, 2019 | Location | Time | Piece |
|---|---|---|---|---|
| 11 | Delivered - Signed for by: SHIWENYONG | BEIJING | 14:31 | 1 Piece |
| 10 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:06 | 1 Piece |
| 9 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:27 | 1 Piece |
| 8 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:47 | 1 Piece |
| 7 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:46 | 1 Piece |
| 6 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:16 | 1 Piece |
| 5 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:10 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:06 | 1 Piece |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 00:35 | 1 Piece |

| | Monday, February 25, 2019 | Location | Time | Piece |
|---|---|---|---|---|
| 2 | Shipment picked up | HONG KONG - HONG KONG | 16:58 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 14:19 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please   contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group

简体中文  English  繁體中文     Contact DHL Express     Contact Center     Country/Region Profile     DHL Global



**Annex A
No.5**

# Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service -- our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| | | |
|---|---|---|
| **Waybill: 2150670491** | **Wednesday, April 17, 2019 at 10:54** | The Estimated Delivery Date is |
| | **Origin Service Area:** | currently unavailable. Please try |
| Shipment on hold | HONG KONG - HONG KONG - HONG KONG | again later. |
| **Sign up for shipment notifications** | | 1 Piece |
| Further Detail: | Next Step: | |
| | **Destination Service Area:** | |
| | BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| Wednesday, April 17, 2019 | | Location | Time | Piece |
|---|---|---|---|---|
| 17 | Shipment on hold | BEIJING - CHINA, PEOPLES REPUBLIC | 10:54 | 1 Piece |
| **Tuesday, April 16, 2019** | | **Location** | **Time** | **Piece** |
| 16 | Shipment on hold | BEIJING - CHINA, PEOPLES REPUBLIC | 20:07 | 1 Piece |
| 15 | Delivery attempted - consignee premises closed | BEIJING - CHINA, PEOPLES REPUBLIC | 10:43 | 1 Piece |
| 14 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:09 | 1 Piece |
| **Monday, April 15, 2019** | | **Location** | **Time** | **Piece** |
| 13 | Delivery attempted - consignee premises closed | BEIJING - CHINA, PEOPLES REPUBLIC | 18:20 | 1 Piece |
| 12 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 09:39 | 1 Piece |
| 11 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:03 | 1 Piece |
| **Sunday, April 14, 2019** | | **Location** | **Time** | **Piece** |
| 10 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 13:58 | 1 Piece |
| 9 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 13:56 | 1 Piece |
| 8 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:48 | 1 Piece |
| 7 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:34 | 1 Piece |
| **Saturday, April 13, 2019** | | **Location** | **Time** | **Piece** |
| 6 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 23:51 | 1 Piece |
| 5 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 00:43 | 1 Piece |
| **Friday, April 12, 2019** | | **Location** | **Time** | **Piece** |
| 4 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:03 | 1 Piece |
| 3 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 15:54 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 11:51 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 10:39 | 1 Piece |

简体中文 English 繁體中文    Contact DHL Express    Contact Center    Country/Region Profile    DHL Global



**Annex A**
**No.6**

# Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| Waybill: 5795857340 | Sunday, May 05, 2019 at 11:04 | 1 Piece |
|---|---|---|
| Signed for by: XUYING | **Origin Service Area:** HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| Sunday, May 05, 2019 | | Location | Time | Piece |
|---|---|---|---|---|
| 12 | Delivered - Signed for by: XUYING | BEIJING | 11:04 | 1 Piece |
| 11 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:34 | 1 Piece |
| **Tuesday, April 30, 2019** | | **Location** | **Time** | **Piece** |
| 10 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 16:33 | 1 Piece |
| 9 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 15:12 | 1 Piece |
| 8 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 15:12 | 1 Piece |
| 7 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 13:02 | 1 Piece |
| 6 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:12 | 1 Piece |
| 5 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:04 | 1 Piece |
| **Monday, April 29, 2019** | | **Location** | **Time** | **Piece** |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:55 | 1 Piece |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:32 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 11:57 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 10:49 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please  contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group



简體中文  English  繁體中文        Contact DHL Express        Find Locations        DHL Wordwide

**Annex A
No.7**

# Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| | | |
|---|---|---|
| **Waybill: 7219794632** | **Tuesday, May 07, 2019 at 14:56** | 1 Piece |
| **Signed for by: SHIWENYONG** | **Origin Service Area:** | |
| | HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** | |
| | BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| **Tuesday, May 07, 2019** | | **Location** | **Time** | **Piece** |
|---|---|---|---|---|
| 12 | Delivered - Signed for by: SHIWENYONG | BEIJING | 14:56 | 1 Piece |
| 11 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:58 | 1 Piece |
| 10 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:37 | 1 Piece |
| 9 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:40 | 1 Piece |
| 8 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:38 | 1 Piece |
| 7 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:30 | 1 Piece |
| 6 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:14 | 1 Piece |
| 5 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:04 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 01:13 | 1 Piece |
| **Monday, May 06, 2019** | | **Location** | **Time** | **Piece** |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:36 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 12:01 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 10:33 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please  contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group



簡體中文  English  繁體中文        Contact DHL Express        Find Locations        DHL Worldwide

**Annex A
No.8**

## Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

### Result Summary

| Waybill: 6288587631 | Thursday, May 23, 2019 at 10:52 | 1 Piece |
|---|---|---|
| Signed for by: SHIWENYONG | **Origin Service Area:** HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| Thursday, May 23, 2019 | | Location | Time | Piece |
|---|---|---|---|---|
| 11 | Delivered - Signed for by: SHIWENYONG | BEIJING | 10:52 | 1 Piece |
| 10 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:32 | 1 Piece |
| 9 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:32 | 1 Piece |
| 8 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:45 | 1 Piece |
| 7 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:11 | 1 Piece |
| 6 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:30 | 1 Piece |
| 5 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:08 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 02:48 | 1 Piece |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 00:14 | 1 Piece |
| **Wednesday, May 22, 2019** | | **Location** | **Time** | **Piece** |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 18:28 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 18:12 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please   contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

**Deutsche Post DHL Group**



簡體中文 English 繁體中文     Contact DHL Express     Find Locations     DHL Wordwide

## Track DHL Express Shipments

**Annex A No.9**

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

## Result Summary

| Waybill: 5572798394 | Tuesday, June 25, 2019 at 10:48 | 1 Piece |
| Signed for by: SHIWENYONG | **Origin Service Area:** | |
| | HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** | |
| | BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| | Tuesday, June 25, 2019 | Location | Time | Piece |
|---|---|---|---|---|
| 11 | Delivered - Signed for by: SHIWENYONG | BEIJING | 10:48 | 1 Piece |
| 10 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:27 | 1 Piece |
| 9 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:40 | 1 Piece |
| 8 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:36 | 1 Piece |
| 7 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:34 | 1 Piece |
| 6 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:22 | 1 Piece |
| 5 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:31 | 1 Piece |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:06 | 1 Piece |
| | **Monday, June 24, 2019** | **Location** | **Time** | **Piece** |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 20:19 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 16:59 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 14:54 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please   contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

**Deutsche Post DHL Group**



簡體中文 English 繁體中文      Contact DHL Express      Find Locations      DHL Wordwide

**Annex A**
**No.10**

## Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service – our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

### Result Summary

| Waybill: 1257383831<br>Signed for by: MS SHI | Tuesday, July 30, 2019 at 14:40<br>**Origin Service Area:**<br>HONG KONG - HONG KONG - HONG KONG<br>**Destination Service Area:**<br>BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | 1 Piece |
|---|---|---|

| Tuesday, July 30, 2019 | | Location | Time | Piece | |
|---|---|---|---|---|---|
| 14 | Delivered - Signed for by: MS SHI | BEIJING | 14:40 | 1 Piece | |
| 13 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 13:58 | 1 Piece | |
| 12 | Shipment on hold | BEIJING - CHINA, PEOPLES REPUBLIC | 09:14 | 1 Piece | |
| **Monday, July 29, 2019** | | **Location** | **Time** | **Piece** | |
| 11 | Recipient moved | BEIJING - CHINA, PEOPLES REPUBLIC | 10:22 | 1 Piece | |
| 10 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 09:52 | 1 Piece | |
| 9 | Arrived at Delivery Facility in BEIJING -<br>CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:42 | 1 Piece | |
| **Sunday, July 28, 2019** | | **Location** | **Time** | **Piece** | |
| 8 | Departed Facility in BEIJING - CHINA,<br>PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 14:29 | 1 Piece | |
| 7 | Processed at BEIJING - CHINA, PEOPLES<br>REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 14:29 | 1 Piece | |
| 6 | Arrived at Sort Facility BEIJING - CHINA,<br>PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:17 | 1 Piece | |
| 5 | Departed Facility in HONG KONG - HONG<br>KONG | HONG KONG - HONG KONG | 03:33 | 1 Piece | |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 01:37 | 1 Place | |
| **Saturday, July 27, 2019** | | **Location** | **Time** | **Piece** | |
| 3 | Arrived at Sort Facility HONG KONG - HONG<br>KONG | HONG KONG - HONG KONG | 21:17 | 1 Piece | |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 17:01 | 1 Piece | |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 12:18 | 1 Piece | |

If you would prefer to speak to someone personally about the location of your shipment, please   contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group



簡體中文  English  繁體中文          Contact DHL Express          Find Locations          DHL Wordwide

**Annex A**
**No.11**

## Track DHL Express Shipments

Here's the fastest way to check the status of your shipment. No need to call Customer Service -- our online results give you real-time, detailed progress as your shipment speeds through the DHL network.

### Result Summary

| | | |
|---|---|---|
| Waybill: 2530848773 | **Thursday, August 08, 2019 at 10:53** | 1 Piece |
| Signed for by: SHI WENYONG | **Origin Service Area:** | |
| | HONG KONG - HONG KONG - HONG KONG | |
| | **Destination Service Area:** | |
| | BEIJING - BEIJING - CHINA, PEOPLES REPUBLIC | |

| | **Thursday, August 08, 2019** | **Location** | **Time** | **Piece** |
|---|---|---|---|---|
| 12 | Delivered - Signed for by: SHI WENYONG | BEIJING | 10:53 | 1 Piece |
| 11 | With delivery courier | BEIJING - CHINA, PEOPLES REPUBLIC | 10:22 | 1 Piece |
| 10 | Arrived at Delivery Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 09:24 | 1 Piece |
| 9 | Departed Facility in BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:50 | 1 Piece |
| 8 | Processed at BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 08:08 | 1 Piece |
| 7 | Arrived at Sort Facility BEIJING - CHINA, PEOPLES REPUBLIC | BEIJING - CHINA, PEOPLES REPUBLIC | 07:15 | 1 Piece |
| 6 | Departed Facility in HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:35 | 1 Piece |
| 5 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 03:05 | 1 Piece |
| | **Wednesday, August 07, 2019** | **Location** | **Time** | **Piece** |
| 4 | Processed at HONG KONG - HONG KONG | HONG KONG - HONG KONG | 21:55 | 1 Piece |
| 3 | Arrived at Sort Facility HONG KONG - HONG KONG | HONG KONG - HONG KONG | 17:15 | 1 Piece |
| 2 | Shipment picked up | HONG KONG - HONG KONG | 11:56 | 1 Piece |
| 1 | Shipment Accepted | HONG KONG - HONG KONG | 10:06 | 1 Piece |

If you would prefer to speak to someone personally about the location of your shipment, please   contact  DHL Express Customer Service.

**Terms & Conditions**
**Tracking FAQs**

Deutsche Post DHL Group

**Annex B**

**Tribunal's email dated 22 July 2019**

14-Aug-19

| | |
|---|---|
| **Subject:** | HKIAC/A18222 - Zhongzhi Hi-Tech Overseas Investment Ltd. (Cayman Islands) v. Vincent Wenyong Shi (People's Republic of China) |
| **From:** | "Benny Lo" <benny.lo@dvc.hk> |
| **Sent:** | 22-Jul-19 5:52:04 PM |
| **To:** | "Project NQ - DaHui" <ProjectNQ@dahuilawyers.com>; "shiwenyong@263.net" <shiwenyong@263.net>; |
| **CC:** | "Michelle Shi" <mshi@hkiac.org>; "arbitration@hkiac.org" <arbitration@hkiac.org>; |

Dear Parties,

The Tribunal thanks the Claimant again for filing its Clarification dated 5 July 2019 ("Clarification") in response to the Tribunal's earlier request. Having reviewed the Clarification, the Tribunal wishes to seek a further clarification on the Claimant's case as explained below.

## Further Clarification Sought on the Claimant's Case

1. In the Clarification, the Claimant has set out its position, inter alia, as follows:-

"[10.] Therefore, the "principal amount" in item (i) of the definition of "CB Return" is US$132,000,000, not US$220,000,000, as the (original) Note had been amended and restated at the time of the Amendment to Cooperation Agreement.

[11.] Following from the above, the US$88,000,000 partial redemption should not be included in the calculation of "CB Return". [(**"Claimant's Position"**)]"

2. In the course of assessing the Claimant's Position on the interpretation of the definition of "CB Return" (which is question of law), the Tribunal has done the following calculations to compare how much the Claimant would receive upon maturity of the Note in three different scenarios, namely:-

(a) Pursuant to sections 1.1 and 1.2 of the Cooperation Agreement (no partial redemption by NQ Mobile, no interests paid before maturity, and no conversion into shares) ("**Scenario 1**");

(b) Pursuant to section 1.2 of the Amended Cooperation Agreement with "principal amount" in item (i) of the definition of "CB Return" being US$132,000,000 (i.e. the Claimant's Position) (partial redemption by NQ Mobile of US$88,000,000, no interests paid before maturity, and no conversion into shares) ("**Scenario 2**"); and

(c) Pursuant to section 1.2 of the Amended Cooperation Agreement with "principal amount" in item (i) of the definition of "CB Return" being US$220,000,000 ("**Alternative Interpretation**") (partial redemption by NQ Mobile of US$88,000,000, no interests paid before maturity, and no conversion into shares) ("**Scenario 3**").

3. On the Tribunal's calculation:-

(a) Under **Scenario 1**, the total amount the Claimant would receive upon maturity is:-

14-Aug-19

> US$220,000,000 (repayable by NQ Mobile under the Note); plus
> US$220,000,000 x 10% p.a. x 2 years of "basic interests" under section 1.1 of the Cooperation Agreement = US$44,000,000; plus
> US$220,000,000 x 2.5% p.a. x 2 years of "interests upon maturity" under section 1.2 of the Cooperation Agreement = US$11,000,000
**= US$275,000,000**

(b) Under **Scenario 2**, the total amount the Claimant would receive upon maturity is:-

> US$264,000,000 ("Guaranteed Return"); minus
> US$0 ("principal amount" of US$132,000,000 repaid); minus
> US$0 (market value of conversion ADSs); plus
> US$88,000,000 (received under partial redemption)
**= US$352,000,000**

(c) Under **Scenario 3**, the total amount the Claimant would receive upon maturity is:-

> US$264,000,000 ("Guaranteed Return"); minus
> US$88,000,000 ("principal amount" of US$220,000,000 repaid); minus
> US$0 (market value of conversion ADSs); plus
> US$88,000,000 (received under partial redemption)
**= US$264,000,000**

4. Based on the above calculations, it would seem that the total amount the Claimant would have received upon maturity would be **US$77,000,000 higher** if calculated under the Claimant's Position than if there had been no partial redemption and the Claimant's entitlement is calculated as per Scenario 1.

5. While these calculations are only "rough and ready" calculations, the Tribunal has not been able to understand <u>why the Claimant would be entitled to receive US$77,000,000 more under Scenario 2 as compared with Scenario 1, as a result of the partial redemption of US$88,000,000</u>.

6. Accordingly, the Tribunal hereby invites the Parties, if they so wish, to file any additional submissions/evidence to address the above **on or before Friday 26 July 2019 at 12:00 Hong Kong time**.

7. The Tribunal also directs the Claimant's counsel to immediately cause a copy of this email to be couriered to the Respondent's current address on record, and to supply the Tribunal with proof of delivery as soon as possible upon delivery.  Thank you very much.

Best regards,
Benny Lo
Sole Arbitrator


**BENNY LO**
**Barrister & Chartered Arbitrator**
MA (Cantab) PhD CArb FCIArb FHKIArb
Registered Foreign Lawyer, SICC (Singapore)

14-Aug-19

Des Voeux Chambers
38/F, Gloucester Tower, The Landmark, Central, Hong Kong
Tel: (+852) 2526 3071  Fax: (+852) 2810 5287
Email: Benny.Lo@dvc.hk
Linkedin: linkedin.com/in/benny-lo

**Annex C**

**Claimant's costs summaries**

**Appendix I: Claimant's Costs**
**Summary of Legal Fees of DaHui Lawyers**

| Professional | Title | Hourly Rate | Hours Worked |
|---|---|---|---|
| Arthur Ma | Partner | RMB 4,200 | 45.7 |
| Mark Young | Counsel | RMB 3,000 | 75.0 |
| Vivian Ma | Senior Associate | RMB 2,700 | 19.0 |
| Wendy Simon-Pearson | Associate | RMB 1,800 | 18.3 |
| Sharon Yang | Associate | RMB 1,800 | 76.0 |
| Daisy Sun | Chief Translator | RMB 1,800 | 8.8 |
| Sibyl Qian | Translator | RMB 1,300 | 2.5 |
| Phoebe Ren | Translator | RMB 1,300 | 8.8 |
| **TOTAL FEES (including disbursements other than travel expenses for Hearing plus 6% VAT)** | | **RMB 708,890** | |

Note: The above table includes the time and fees incurred as of 2 July 2019.

3

**Summary of Claimant's Costs**

| Description | Amount (Original Currency) | Amount (Converted to USD) |
|---|---|---|
| DaHui Lawyers' Legal Fees | RMB 708,890 | USD 103,273.57 |
| Travel Expenses for Hearing (3 counsel from DaHui Lawyers and 1 party representative) | RMB 24,030 | USD 3,500.77 |
| HKIAC Registration, Administrative and Arbitrator's Fee* | HKD 657,955 | USD 83,347.80 |
| HKIAC Hearing Room Fee | HKD 2,085 | USD 267.29 |
| Epiq Transcript Fees | HKD 5,275 | USD 676.24 |
| **TOTAL** | | **USD 192,065.67** |

\*   Total amount paid for fees and deposit by the Claimant on behalf of the Claimant and the Respondent.  Final HKIAC Administrative and Arbitrator's Fee to be determined.

**Exchange rates (on 2 July 2019):[1]**

HKD:USD – 7.8005
RMB:USD – 6.8642

---

[1] Based on exchange rates available at www.xe.com.

4

**Annex D**

**Statement of account**


HKIAC 香港國際仲裁中心
Hong Kong International
Arbitration Centre

Statement of account for arbitration between

**Claimant:** Zhongzhi Hi-Tech Overseas Investment Ltd          (DaHui Lawyers)
**Respondent:** Vincent Wenyong Shi
**Case No:** HKIAC/A18222
**Relevant period:** 26 Nov 18 - 20 Aug 19

| Subject | Incoming HK$ | Outgoing HK$ |
|---|---|---|
| **Claimant** | | |
| - Registration Fee | 7,985.00 | |
| - HKIAC Administrative Fee | 399,985.00 | |
| - Deposit | 300,495.00 | |
| Sub-total | 708,465.00 | |
| **Tribunal** | | |
| **Fees & expenses** | | |
| - B Lo | | 70,356.00 |
| **Other expenses** | | |
| - Bank charges | | |
| Sub-total | | 70,356.00 |
| **HKIAC** | | |
| - Registration Fee | | 7,985.00 |
| - HKIAC Administrative Fee | | 399,970.00 |
| Sub-total | | 407,955.00 |

**Remaining deposit**                                   **230,154.00**

*PENDING/PROCESSING PAYMENT (APPROX AMOUNT)*                *HK$*

14 Aug 19    B Lo's fee note                               229,000.00
14 Aug 19    B Lo's expenses                                 1,154.00

*Approximate remaining deposit*                                 -

HKIAC
香港國際仲裁中心
Hong Kong International
Arbitration Centre

Last update: 20-08-19

Statement of account for arbitration between

**Claimant:** Zhongzhi Hi-Tech Overseas Investment Ltd    (DaHui Lawyers)
**Respondent:** Vincent Wenyong Shi
**Case No:** HKIAC/A18222

| | Funds from parties | | | | | | | | Expenses | | | | | |
| | Claimant | | | Respondent | | | | Tribunal | | | Expenses | | HKIAC | |
| | Deposit | Withdrawal | Balance | Deposit | Withdrawal | Balance | B Lo | HK$ | HK$ | Expenses | Fees | Expenses |
| | HK$ | HK$ | HK$ | HK$ | HK$ | HK$ | HK$ | | | HK$ | HK$ | HK$ |
| 26 Nov 18 | Registration Fee | 7,985.00 - | 7,985.00 | - | | - | - | | | | | 7,985.00 | |
| 16 Jan 19 | Deposit | 99,985.00 | - | 99,985.00 | | - | - | | | | | | |
| 16 Jan 19 | HKIAC Administrative Fee | 399,985.00 - | 199,992.50 | 299,977.50 | | 199,992.50 - | 199,992.50 | | | | | 399,985.00 | |
| 20 May 19 | B Lo's fee note | | 34,500.00 | 265,477.50 | | 34,500.00 - | 234,492.50 | 69,000.00 | | | | | |
| 20 May 19 | B Lo's expenses | | 678.00 | 264,799.50 | | 678.00 - | 235,170.50 | | | 1,356.00 | | | |
| 3 Jun 19 | Deposit | 150,000.00 | - | 414,799.50 | | - | 235,170.50 | | | | | | |
| 19 Aug 19 | Deposit | 50,510.00 | | 465,309.50 | | - | 235,170.50 | | | | | | |
| 20 Aug 19 | Balance beared by HKIAC | | 7.50 | 465,317.00 | | 7.50 - | 235,163.00 | | | | 15.00 | | |
| | | 708,465.00 - | 243,148.00 | 465,317.00 | - | 235,163.00 - | 235,163.00 | 69,000.00 | - | - | 1,356.00 | 407,955.00 | - |

**Total received:** 708,465.00
**Total expenses:** -478,311.00
**Remaining deposit:** 230,154.00

Less Pending/Processing Payment (Approx Amount): -230,154.00

**Approximate remaining deposit:** 0.00

PENDING/PROCESSING PAYMENT (APPROX AMOUNT)

| | | HK$ |
| 14 Aug 19 | B Lo's fee note | 229,000.00 |
| 14 Aug 19 | B Lo's expenses | 1,154.00 |
| | | 230,154.00 |