UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
ZHONGZHI HI-TECH OVERSEAS
INVESTMENT LTD.,

                 Petitioner,              22-CV-6977 (LAP)

-against-                                 OPINION & ORDER

VINCENT WENYONG SHI,

                 Respondent.
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Respondent Vincent Wenyong Shi's
motion to dismiss Petitioner Zhongzhi Hi-Tech Overseas
Investment Ltd.'s ("Hi-Tech") Petition to Confirm and Enforce
Foreign Arbitral Award and for Entry of Judgement.[1]  Petitioner
opposes the motion.[2]  For the reasons below, Respondent's motion
is GRANTED.

## I.   Background

Hi-Tech is a limited liability exempted company organized
under the laws of the Cayman Islands with its principal place of
business in Beijing, China.  (Petition ¶ 2.)  The Respondent,

---

[1] (See Resp't's Mem. of Law in Supp. of Mot. to Dismiss Pet.
("Res. Mem."), dated Oct. 27, 2022 [dkt. no. 32]; see also
Resp't's Reply Mem. of Law in Supp. of Mot. to Dismiss Pet.
("Res. Reply"), dated Dec. 16, 2022 [dkt. no. 34].)

[2] (See Pet. to Confirm and Enforce Foreign Arbitral Award and for
Entry of J. ("Petition") ¶ 2, dated Aug. 16, 2022 [dkt. no. 1];
see also Pet'r's Mem. of Law in Opp'n to Resp't's Mot. to
Dismiss ("Pet. Opp."), dated Nov. 28, 2022 [dkt. no. 33].)

Dr. Vincent Wenyong Shi, is a citizen of the People's Republic of China ("China").  (Id. ¶ 3.)  Dr. Shi is the Chairman of the Board and Chief Operating Officer of Link Motion, Inc. ("LKM"), a Chinese tech company.  (Id. ¶ 19.)

On September 23, 2016, Hi-Tech, Dr. Shi, and RPL Holdings Limited ("RPL") entered into a cooperation agreement ("Cooperation Agreement").  (Id. ¶ 10; see also dkt. no. 5-2 ("Cooperation Agreement").)  The Cooperation Agreement stated that New York law would govern.  (Petition ¶ 21; Cooperation Agreement at 3, § 4.1.)  However, the parties agreed to resolve any disputes relating to the agreement through arbitration in Hong Kong.  (Res. Mem. at 3; Cooperation Agreement at 3, § 4.1.)  On the same day, Hi-Tech and NQ Mobile Inc., later known as LKM, entered into a convertible note purchase agreement ("Purchase Agreement").  (Petition ¶ 10; see also dkt. no. 5-3 ("Purchase Agreement").)  Pursuant to the Purchase Agreement, on October 3, 2016, Hi-Tech paid LKM a sum of money, and LKM issued the note to Hi-Tech.  (Petition ¶ 11.)

On November 9, 2017, Hi-Tech, Dr. Shi, and RPL amended the Cooperation Agreement.  (Id. ¶ 12; see also dkt. no. 5-4 ("Amended Cooperation Agreement").)  "However, Shi and RPL failed to make any payments under the amended Cooperation Agreement."  (Petition ¶ 14.)  On November 30, 2018, Hi-Tech and Dr. Shi entered into a restated governing law and arbitration

2

agreement ("RGLA Agreement").  (Id. ¶ 15; see also dkt. no. 5-5 ("RGLA Agreement").)  The RGLA Agreement "replace[d] the governing law clause and dispute resolution clause applicable to any dispute, controversy, difference or claim between Zhongzhi and Dr. Shi arising out of or relating to the Cooperation Agreement as amended by the Amendment to Cooperation Agreement and the Umbrella Agreement . . . ."  (RGLA Agreement at 2).) The RGLA Agreement stated that arbitration would occur in Hong Kong pursuant to Hong Kong law.  (Id.)

On December 13, 2018, shareholders filed an action against LKM and its directors in this Court, referred to as Baliga v. Link Motion, Inc.  (Petition ¶ 19.)  The shareholders alleged violations by Dr. Shi and LKM of "the U.S. federal securities laws by making misleading statements and omissions in connection with a years-long effort by Link Motion to divest certain of its legacy business segments."  (Res. Mem. at 5-6 (citation omitted).)  At the time of the lawsuit's filing, LKM was listed on the New York Stock Exchange ("NYSE").  (Id. at 6.)  LKM was delisted from the NYSE on or around January 1, 2019.  (Id.) Dr. Shi continues to defend that lawsuit, (id. at 7), but allegedly has not visited the United States since 2018, (id. at 16).

"On December 20, 2018, Hi-Tech commenced the arbitration against Shi," which was conducted pursuant to the RGLA

Agreement.  (Petition ¶¶ 17-18.)  Hi-Tech was awarded nearly
$145 million plus interest.  (Id. ¶ 31.)  On August 16, 2022,
Petitioner filed a Petition to Confirm and Enforce Foreign
Arbitral Award and for Entry of Judgement with this court.  (See
generally id.)  On October 27, 2022, Respondent filed a motion
to dismiss for lack of personal jurisdiction.

   II.  **Legal Standard**

       United States District Courts have the authority to confirm
foreign arbitration awards under the U.N. Convention on the
Recognition and Enforcement of Foreign Arbitral Awards.
Transatlantic Bulk Shipping Ltd. v. Saudi Chartering S.A., 622
F. Supp. 25, 27 (S.D.N.Y. 1985).  The Convention gives the
district courts subject matter jurisdiction over these matters,
but petitioners must prove the court has personal jurisdiction
over the respondent.  Id. at 26-27.

       "To survive a motion to dismiss, 'Plaintiffs need only make
a prima facie showing of personal jurisdiction over the
defendant.'"  Lelchook v. Société Générale de Banque au Liban
SAL, 67 F.4th 69, 75 (2d Cir. 2023) (quoting Chloe v. Queen Bee
of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010)).  The
court "construe[s] the pleadings and affidavits in the light
most favorable to plaintiffs, resolving all doubts in their
favor." Chloe, 616 F.3d at 163.

       To   determine   personal   jurisdiction   over   a   non-

domiciliary in a case involving a federal question, the
Court must engage in a two-step analysis.  First, we
apply the forum state's long-arm statute. . . .  If the
long-arm statute permits personal jurisdiction, the
second step is to analyze whether personal jurisdiction
comports with the Due Process Clause of the United States
Constitution.

Id. at 164 (citations omitted).

## A. **Statutory Basis**

New York's long arm statute provides, in part, "a court may

exercise personal jurisdiction over any non-domiciliary, or his

executor or administrator, who in person or through an agent

. . . transacts any business within the state or contracts

anywhere to supply goods or services in the state."  N.Y.

C.P.L.R. § 302(a)(1).  "'To establish personal jurisdiction

under section 302(a)(1), two requirements must be met: (1) The

defendant must have transacted business within the state; and

(2) the claim asserted must arise from that business activity.'"

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d

161, 168 (2d Cir. 2013) (quoting Solé Resort, S.A. de C.V. v.

Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006));

see also McGowan v. Smith, 419 N.E.2d 321, 323-24 (N.Y. 1981).

The claim arises from the party's business activity when "there

exists an articulable nexus or a substantial relationship

between transactions occurring within the state and the cause of

action sued upon."  Spetner v. Palestine Inv. Bank, 70 F.4th

632, 643 (2d Cir. 2023) (quoting Sunward Elecs., Inc. v.

McDonald, 362 F.3d 17, 23 (2d Cir. 2004)).  Parties may also consent to personal jurisdiction in a forum state.  See Pinto-Thomaz v. Cusi, No. 15-cv-1993 (PKC), 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015) (citing Pichardo v. Zayas, 122 A.D.3d 699, 702 (2d Dep't 2014) (collecting cases); Nilsa B. B. v. Clyde Blackwell H., 84 A.D.2d 295, 303 (2d Dep't 1981)).

### B. Constitutional Due Process

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation."  Walden v. Fiore, 571 U.S. 277, 283-84 (2014) (internal quotations and citations omitted).  "Where, as here, specific jurisdiction is invoked, the Due Process Clause of the Constitution requires that the defendant have sufficient 'minimum contacts' with the forum and that jurisdiction 'not offend traditional notions of fair play and substantial justice.'"  Spetner, 70 F.4th at 644-45 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

"[T]he relationship must arise out of contacts the 'defendant himself' creates with the forum State."  Walden, 571 U.S. at 284 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  "[T]he plaintiff cannot be the only link between the defendant and the forum."  Id. at 285-86 (citing Burger King, 471 U.S. at 478).  The defendant must "take 'some

act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024-25 (2021) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  The defendant's contacts must show that the defendant "deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Id. at 1025 (quoting Walden, 571 U.S. at 285).  Further, the plaintiff's claims must "'arise out of or relate to the defendant's contacts' with the forum." Id. (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty., 582 U.S. 255, 262 (2017)).

> Once a plaintiff has demonstrated the requisite minimum contacts between the defendant and the forum state, a court is required to continue to the "reasonableness" stage of the inquiry and apply the five-factor test of Asahi to assess whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice."

Metro. Life Ins. Co. v. Robertson—Ceco Corp., 84 F.3d 560, 573 (2d Cir. 1996) (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102, 113-16 (1987)). The Asahi factors are:

> [1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief. [The Court] must also weigh in its determination [4] the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and [5] the shared interest of the several States in furthering fundamental substantive

7

social policies.

Chloe, 616 F.3d at 173 (quoting Asahi, 480 U.S. at 113).

### III. Discussion

#### A. New York Law Does Not Grant Personal Jurisdiction

In this case, Petitioner does not assert any grounds for general jurisdiction over Respondent[3] but, rather, offers the following bases for the Court to exercise specific jurisdiction. First, the original Cooperation Agreement dictating that New York law would govern; second, Respondent's current participation in a separate lawsuit before this Court; and third, Respondent's continued leadership of LKM.  (Pet. Opp. at 7.)  However, even construing all the evidence in favor of Petitioner, as the Court must, Petitioner has not sufficiently alleged either how Respondent has consented to jurisdiction in New York or, in the alternative, how these contacts relate to the present claim to justify exercising specific jurisdiction.

##### i.   The Choice of Law Provision

The original Cooperation Agreement stated that New York law would govern.  (Cooperation Agreement at 3, § 4.1.)  However,

---

[3] Petitioner has ultimately conceded that Respondent does not maintain an address in New York.  See Petition ¶ 7 ("This Court has personal jurisdiction to hear the instant petition and enforce the Award because Shi maintains a valid business address in this District").  But see generally Pet. Opp. (no mention of Respondent's alleged New York address, only arguments for specific personal jurisdiction).)

the RGLA Agreement "replace[d] the governing law clause and dispute resolution clause applicable to any dispute, controversy, difference or claim between Zhongzhi and Dr. Shi arising out of or relating to the Cooperation Agreement as amended by the Amendment to the Cooperation Agreement and the Umbrella Agreement."  (RGLA Agreement at 2.)  In the RGLA Agreement, the parties agreed that arbitration of such disputes would occur in Hong Kong and Hong Kong law would govern.  (Id.) The agreement to arbitrate in Hong Kong equated to consent to jurisdiction in Hong Kong.  See Absolute Nev., LLC v. Grand Majestic Riverboat Co., --- F. Supp. 3d ----, 2022 WL 17669429, at *9 (S.D.N.Y. Dec. 14, 2022).[4]  The RGLA Agreement was signed by Petitioner and Respondent and made clear the parties intended for it to replace the choice of law and dispute resolution provisions of all prior agreements.  (See Res. Mem. at 5.) Thus, the RGLA Agreement superseded the original and amended Cooperation Agreements, and the New York choice of law provision is no longer applicable.  See Ottawa Off. Integration Inc. v.

---

[4]      "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006). An "agreement to resolve disputes by arbitration in New York constitute[s] consent to personal jurisdiction in New York." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos, 553 F.2d 842, 844 (2d Cir. 1977).

Absolute Nev., 2022 WL 17669429, at *9.

FTF Bus. Sys., Inc., 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001) ("It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes [sic.] the old agreement.").  Therefore, the choice of law provision in the original Cooperation Agreement provides no basis for the Court to exercise jurisdiction over Respondent.

Moreover, Petitioner concedes that a choice of law provision does not equate to consent to jurisdiction.  (Pet. Opp. at 7, n.7.)  Instead, Petitioner argues that taken together with Respondent's participation in a separate lawsuit before this Court, the Court should take the choice of law provision to be "highly probative" of his consent.  (Id.)  However, Petitioner cites no authority to support this proposition.  More importantly, the Court disagrees with Petitioner's claims that Respondent's defense of the Baliga action provides any basis for personal jurisdiction over Respondent, as discussed below.

### ii.   **The Baliga Action**

Baliga v. Link Motion was brought by LKM shareholders alleging that Respondent and LKM were "unlawfully divesting Link Motion's assets, including whole subsidiaries, by selling them without permission from shareholders."  385 F. Supp. 3d 212, 214 (S.D.N.Y. 2019).  Respondent was accused, inter alia, of "fabricat[ing] certain transactions to benefit himself to the detriment of shareholders . . . ."  Id. at 215.  Here,

10

Petitioner attempts to support its assertion that the Court may exercise personal jurisdiction over Respondent by reference to Respondent's defense of the Baliga action.  (See Petition ¶¶ 19-20; see also Pet. Opp. at 3-4, 7-9.)  However, the Court of Appeals has stated that, apart from some exceptions not relevant here, "[a] party's consent to jurisdiction in one case [ ] extends to that case alone.  It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available." V&A Collection, LLC v. Guzzini Props. Ltd., 46 F.4th 127, 132 (2d Cir. 2022) (quoting Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 50 n.5 (2d Cir. 1991)).  Thus, the Court cannot find that Respondent's defense of the Baliga action established his consent to be sued in this jurisdiction.

Furthermore, Petitioner's arguments regarding Respondent's defense in the Baliga action fail to meet either prong of the statutory analysis required under N.Y. C.P.L.R. § 302(a)(1). First, defending an action is not considered to be "doing business" in the New York.  See Greatship (India) Ltd. v. Marine Logistics Sols. (Marsol) LLC, 2012 WL 204102, at *4 (S.D.N.Y. Jan. 24, 2012) (citing N.Y. Bus. Corp. Law § 1301(b)(1) (McKinney 2003) ("a foreign corporation shall not be considered to be doing business in this state . . . by reason of . . .

[m]aintaining or defending any action or proceeding, whether
judicial, administrative, arbitrative or otherwise . . . .");
Gruman v. Plotkin, 403 N.Y.S.2d 88, 89 (N.Y. App. Div. 1978)
(noting that foreign corporation was not "doing business" by
commencing action in New York Supreme Court to enforce mortgage
note)).  Second, Petitioner has not asserted sufficient facts
regarding how there is an "arguable nexus" between the Baliga
lawsuit and the present action.  Petitioner simply states that
the Baliga complaint "made specific allegations regarding Hi-
Tech and the subject note."  (Pet. Opp. at 8.)  Petitioner
provides no further explanation on how the two actions are
related.  Thus, Petitioner's ultimate conclusion that the Baliga
action "is directly related to this proceeding . . . ," (Pet.
Opp. at 7), is a legal assertion couched as a factual one that
the Court need not accept as true.  See Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

### iii.  **Respondent's Leadership of LKM**

     The Court agrees with Respondent that his leadership of LKM
is inadequate to confer jurisdiction.  This Court has held that
"having securities listed on New York-based stock exchanges and
preforming activities necessary to facilitate those listings,
without more, are insufficient to confer New York jurisdiction
over a foreign corporation."  IP Co. v. Gen. Commc'n, Inc., No.
07 Civ. 2372 (CLB), 2007 WL 3254387, at *3 (S.D.N.Y. Oct. 31,

2007) (citing Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 97 (2d Cir. 2000)); see also Pomeroy v. Hocking Valley Ry. Co., 113 N.E. 504, 505-06 (N.Y. 1916).  In IP Co., the defendant was the corporation itself.  See 2007 WL 3254387, at *1.  Finding jurisdiction over Respondent would be further attenuated from the corporate defendant in IP Co. for which the Rule 12(b)(2) motion to dismiss was granted.  See id. at *6.  Petitioner's argument is also unpersuasive because LKM was delisted from the NYSE in 2019.  (Res. Mem. at 6.)

Petitioner notes it is not attempting to justify LKM's shares being previously listed on the NYSE as the sole basis for jurisdiction.  (Pet. Opp. at 9.)  However, given that Respondent has not consented to jurisdiction in New York, and his defense of the Baliga action does not provide a basis for personal jurisdiction, as explained above, Petitioner has nothing left but the prior NYSE listing.  Therefore, New York law does not grant authority to this Court to exercise personal jurisdiction over Respondent in this case.

## B. Exercising Jurisdiction Over Respondent Would Not Comport with the Constitution

Respondent asserts that exercising jurisdiction would raise due process concerns.  (Res. Reply at 5-6.)  Applying the Asahi factors, the Court reaches the same conclusion.  The Court agrees with Respondent that the burden on him would be

significant, as he allegedly has not even visited the United States since 2018.  (Res. Mem. at 16.)  Additionally, New York and even the United States in general has little interest in resolving this issue, as neither party is domiciled in the US, (Petition ¶¶ 2-3), and the arbitration occurred abroad, (Res. Mem. at 15).  Of course, Petitioner has an interest in obtaining relief, but not in New York.  By agreeing to arbitrate in Hong Kong, both parties consented to jurisdiction there.  <u>See Absolute Nev.</u>, 2022 WL 17669429, at *9.  In contrast, based on the facts alleged, Respondent had little to no reason to anticipate being subjected to litigation in New York over issues relating to the Cooperation Agreements and subsequent arbitration.  Therefore, as a matter of due process, the Court is not permitted to exercise jurisdiction over Respondent in this case.

## IV.  <u>Conclusion</u>

For the foregoing reasons, Respondent's motion to dismiss is <u>GRANTED</u>.  Based on Petitioner's failure to make out a <u>prima facie</u> case for personal jurisdiction over Respondent, it would be futile to permit Petitioner to amend his Petition because he cannot offer additional substantive information to cure the

deficiencies.[5]  Thus, Respondent's motion to dismiss is granted

with prejudice.

     The Clerk of the Court shall close the open motion (dkt.

no. 29) and close case number 22-CV-6977.


**SO ORDERED.**

Dated:     July 17, 2023
           New York, New York

                    *Loretta A. Preska*
           _____
           LORETTA A. PRESKA
           Senior United States District Judge

_____

[5] "Although Rule 15(a) of the Federal Rules of Civil Procedure
provides that leave to amend shall be freely given when justice
so requires, it is within the sound discretion of the district
court to grant or deny leave to amend."  McCarthy v. Dun &
Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (internal
quotation marks and citations omitted).